ALLEN vs. HOLLIS.

1. When goods ·are sold, and nothing is said as to the time of delivery, or·the time of payment, and everything the seller has to do with them is complete,. the property vests in the buyer—the seller being bound to deliver them when-. ever they are demanded, upon the payment of the price—the buyer having no· right to the possession of the goods till he pays the price.

2. The assent of the vendee to take the specific chattel, and to pay the stipulated price, is equivalent to his accepting possession; and the effect of the contract is, to vest the chattel in the bargain, etc.

Assumpsit, in Spalding Superior Court. Tried before Judge CABANISS, at the May Term, 1860.

James M. Hollis commenced an action of assumpsit in the Superior Court of Spalding county, against Josiah Y. Allen, to recover the purchase price of three negroes, to wit: Rose and her two children, Bob and Hannah, which, he alleged, had been, before that time, sold to the said Allen by him.

The facts of the case were as follows:

The defendant, Allen, wrote a letter to the plaintiff, dated:

**BREACH OF CONTRACT OF SALE AND DELIVERY.** "Where two acts are to be done at the same time, as where one agrees to sell and deliver, and the other to receive and pay, **in an action for** the **non-delivery** it is **necessary for the plaintiff to· aver and prove a readiness to pay on his part,** whether the other party was at the place ready to· deliver or not." If no time for delivery is specified in the contract, a demand and refusal must be alleged. The allegation that the defendants. failed to deliver "at the time specified," there being no other allegation showing that any time was in fact specified in the contract, is not sufficient, in the absence of other requisite allegations, to set forth a. breach of the contract. See Biggers *v.* Pace, 5 Ga. 171; Hotchkiss *v.* Newton, 10 Ga. 560, 565; Bruce *v.* Crews, 39 Ga. 544 (3), 548; Allen *v.* Hollis, 31 Ga. 143, 147; Maxwell, Code Pleading (ed. 1892), p. 81, and, cases ·ited. in note 1." Pusey & Co. *v.* McElveen Co., 93 Ga. 775.

"GRIFFIN, GA., Sept. 26th, 1858.

"MR. J. M. HOLLIS.

"*Dear Sir:*—Yours of the 19th was handed me by Lew, yesterday, saying, that you had concluded to take my offer for Rose and children, that being fifteen hundred dollars, which I shall consider a trade. You can keep them until I return from the West, say some time in December, at which time I expect to pay you for them.

"I remain yours, most respectfully,

"J. Y. ALLEN."

On the 29th of December, 1858, the negro woman, Rose, died, without fault or negligence on the part of plaintiff, by whom, up to that time, she and her children were kept and well cared for; that, on the 28th of January, 1859, the plaintiff tendered to the defendant the two children of Rose, with a bill of sale, conveying the same to him, and demanded payment of the fifteen hundred dollars, which defendant refused to pay; that defendant admitted that he valued Bob at five hundred dollars, Hannah, at three hundred, and their mother, Rose, at seven hundred dollars, she being a number one field hand.

The presiding Judge charged the jury as follows:

"There must be a contract or agreement, to which both parties assent. An agreement, or bargain, can be made by correspondence, as well as by the parties being present face to face; and when a proposition is made by one party, and accepted by the other by letter, the bargain is complete upon the letter accepting the proposition, being deposited in the post-office, or otherwise sent. And when the bargain is complete, and the trade is made, the property in the thing sold vests in the buyer, if there be nothing more necessary to be done to designate the thing sold. Where, by the contract, the seller appropriates to the buyer a specific chattel, or thing, and the latter agrees to take that specific chattel, or thing, and to pay the stipulated price, the property in the thing sold passes, without delivery, if the agreement to purchase be reduced to writing, and signed by the party to be charged therewith. And when the property in the thing sold vests in the buyer, and there is a loss or destruction of the property before the change of possession, the loss falls on the buyer. Applying this law to the facts of the case before you: If the defendant proposed to give the plaintiff a

certain price for the negroes, and the plaintiff accepted that proposition, and the defendant, then, ratified the acceptance of the plaintiff in writing, that amounts to a bargain, and passed the property in the negroes to the defendant, and any loss by the death of either of the negroes, afterwards, must fall on the defendant. If these facts appear from the proof (and any admissions made by the defendant, under his own hand-writing, is proof)—if these be the facts, you will find for the plaintiff the price agreed to be paid for the negroes, with interest from the time it became due. If there was no sale of the negroes by plaintiff to the defendant, you will find for the defendant.

"That, under the Statute of Georgia, contracts for the purchase of slaves must be in writing, and must be signed by the party to be bound by the same, and that, in order to the legal validity of such contracts, they must be mutually binding on each party, so that neither party can take advantage of, or avoid the contract, by virtue of the statute."

The jury returned a verdict in favor of the defendant, with cost of suit.

Counsel for the plaintiff, then, moved for a new trial, on the following grounds, to wit:

1. Because the verdict of the jury was contrary to the evidence, and decidedly against the weight of the evidence.

2. Because the verdict of the jury is contrary to law.

3. Because the verdict of the jury was contrary to the charge of the Court.

The presiding judge sustained the motion, and passed an order setting aside the verdict and award, in a new trial.

This decision of the presiding judge constitutes the error assigned in this case.

ALFORD, for the plaintiff in error.

GIBSON & MOORE, represented by BECK, PEEPLES & CABANISS, T. B. CABANISS, for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Some negotiations had taken place between these parties, respecting the sale of a family of negroes, to wit: a woman

and two children, owned by Hollis, and which Allen proposed purchasing. We learn from the letter, written by Allen to Hollis, that Allen had offered fifteen hundred dollars for the slaves. Hollis agrees to accept Allen's offer. And this is shown by the letter, written by Allen to Hollis, dated 26th September, 1858, in which he says: "Yours of the 19th was handed me by Lew yesterday, saying, you had concluded to take my offer for Rose and children—that being fifteen hundred dollars—*which I shall consider as a trade*. You can keep them until I return from the West, say some time in December, at which time I expect to pay you for them."

This letter is a ratification, by Allen, of the acceptance by Hollis of his, Allen's, offer. It is argued, that stipulations are added, by Allen, which it does not appear Hollis ever acceded to, namely: that Hollis should keep the negroes till he, Allen, returned from the West, when he expected to pay for them. It may be that this was a part of the agreement between the parties, and that it was inserted in his letter, in order that the writing might contain the whole contract. But, suppose they were new or superadded terms, Hollis, on receiving Allen's letter, should have repudiated them. Allen writes, that he considers it a trade, and the silence of Hollis amounts to an acquiescence in all the terms stated in Allen's letter.

Mr. Broom, in his *Commentaries upon the Common Law*—a book containing more law than any volume of its size extant—says: "Property in specific chattels may pass without delivery. It will so pass, when, at the time of the bargain, everything is already done, which, according to the intention of the parties, was necessary to transfer the property. The appropriation of the property being equivalent to a delivery by the vendor, and the assent of the vendee to take the specific chattel and pay the price, is equivalent to his accepting possession. The effect of the contract, therefore, is: to vest the chattel in the bargainee."

The author adds: "Where goods are sold, and nothing is said, as to the time of delivery, or the time of payment, and everything the seller has to do with them is complete, it is here, as a general proposition, that the property vests in the buyer—the seller being bound to deliver them whenever they are demanded, upon the payment of the price—the buyer having no right to the possession of the goods till he pays

Allen vs. Hollis.

for them." *Pages* 409-410.    And numerous authorities are cited in support of this position.

Suppose, then, the contract in this case had been silent, both as to the time of delivery and the time of payment, still nothing remaining to be done by Hollis, the property would have vested in Allen, still he must pay or tender the price, before he would have been entitled to the possession.   But a loss, accruing under these circumstances, would fall upon Allen, and not upon Hollis.

But that is not this case.   Here, the time of delivery and of payment are specified by the buyer, and not objected to by the seller.   And this was such an appropriation of the property as was, to all legal purposes, equivalent to a delivery.

We concur, therefore, with the Circuit Court, that the verdict of the jury was contrary to the testimony, the law and the charge of the Court.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court that the judgment of the Court below be affirmed.