action was for being wrongfully deprived of the benefits of the second contract, which included these damages, and he might have waited, before bringing the action, until such time as he could prove and recover all his damages.

I vote for affirmance.

HOTCHKISS, J. (dissenting). The contracts of 1893 and 1896 were separate and distinct. When the latter was executed, all of the services incident to the earning of the renewal premiums on the business written prior to September 30, 1896, under the 1893 contract, had been performed by plaintiff. It only remained to ascertain the amount of insurance which should be in force at the end of the respective years during which his interests under that contract continued, and to compute the plaintiff's commission thereon. Neither a failure on plaintiff's part to perform his duty under the contract of 1896, nor his discharge for a breach of such duty, could affect his vested rights under the 1893 contract. Perry v. Dickerson, 85 N. Y. 345, 39 Am. Rep. 663; Milage v. Woodward, 186 N. Y. 252, 253, 254, 78 N. E. 873. It is true that, on the trial of the action for damages, plaintiff offered evidence of the amount of insurance he had procured during the years of the 1893 contract; but this was for the purpose of showing the amount of insurance he probably would have written under the 1896 contract if he had not been discharged, or, in other words, the value which he lost by such discharge.

Such evidence was not offered, nor was it competent under the pleadings, in support of any attempt on plaintiff's part to recover renewal commissions earned under the 1893 contract. There was no such issue in the case.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide event.

---

(159 App. Div. 587)

### SANITARY CARPET CLEANER v. REED MFG. CO.

(Supreme Court, Appellate Division, Fourth Department. December 23, 1913.)

1. TRIAL (§ 180*)—DIRECTION OF VERDICT—DISCHARGE OF JURY.

At the close of plaintiff's evidence, defendant moved for a dismissal of the complaint and judgment on its counterclaim, to which plaintiff had not replied, but no ruling was made on such motion then or when it was afterwards renewed, but the court then stated that it would discharge the jury, "reserving the right in the court at some future time, after an examination has been had and a result reached, to direct a verdict in the absence of the jury with the same effect as though a verdict were directed here to-day." *Held*, that the procedure taken was wholly unauthorized and beyond the court's power.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 405; Dec. Dig. § 180.*]

2. SALES (§ 454*)—CONDITIONAL SALE.

The parties executed a contract by which defendant agreed to place goods sold on board cars on plaintiff's demand within 60 days from the date of the contract; the goods in the meantime to be stored by de-

---

fendant, "but always entirely at the risk of" plaintiff. It was also provided that defendant "shall retain in its possession all of said property so transferred by said bill of sale as security for the payment of said note," assumed by plaintiff to be paid for defendant, and as security against any loss by reason of defendant's contract with another. Plaintiff was permitted to sell any part of the goods while so retained by defendant as security, upon terms approved by defendant, provided the goods sold should be billed out in defendant's name and the purchase price received by it, and applied first to the note and then held for the faithful performance of the other contract. *Held,* that the title to the goods passed presently to plaintiff; the sale not being conditional so as to retain title in defendant.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. § 454.*]

3. SALES (§ 454*)—CONDITIONAL SALE—DELIVERY OF PROPERTY.

As a rule, property is delivered to the conditional vendee in case of conditional sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. § 454.*]

4. PLEDGES (§ 56*)—SALE OF PROPERTY.

If plaintiff defaulted under the contract, defendant could sell and dispose of the goods which it held as security thereunder.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 152–183; Dec. Dig. § 56.*]

Appeal from Trial Term, Erie County.

Action by the Sanitary Carpet Cleaner against the Reed Manufacturing Company, in which defendant counterclaimed. From a judgment for plaintiff, defendant appeals. Reversed and remanded for dismissal of complaint, and judgment against plaintiff on the counterclaim.

See, also, 146 App. Div. 903, 133 N. Y. Supp. 1142.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Hubbell, Taylor, Goodwin & Moser, of Rochester (Joseph W. Taylor, of Rochester, of counsel), for appellant.

Eugene L. Falk and Gordon F. Matthews, both of Buffalo, for respondent.

MERRELL, J. On October 3, 1906, the defendant, a manufacturing corporation organized under the laws of New York, having its factory and principal office at Newark, Wayne county, N. Y., entered into a contract in writing with the plaintiff, also a New York corporation, located and having its principal office at the city of Buffalo, whereby the defendant agreed to manufacture for and sell to the plaintiff 25,-000 Vacuo Sanitary carpet cleaners of a style and in accordance with a sample furnished by plaintiff. For said cleaners plaintiff was to pay defendant $2.23 each, to be paid within 30 days after delivery of the manufactured article. Work upon the manufacture of said sweepers was to be undertaken at once, and delivery was to be made as soon as practicable and in the exercise of due diligence as fast as ordered by plaintiff, and all of said carpet cleaners to be delivered within one year after such delivery should commence, with allowance for delays re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sulting from strikes or other unavoidable causes. All patterns, dies, and directions necessary to manufacture said cleaners were to be furnished by plaintiff.

In further consideration of defendant's undertaking said manufacture, plaintiff therein agreed to deposit with defendant the sum of $10,000 as a continuing guaranty and indemnity to defendant against losses or damages incurred by reason of any violation or infringement of any patent, and also as security for the performance of said contract by plaintiff. Said $10,000 was to be deposited as follows: $6,-000 upon making of the contract, and the balance of $4,000 by payment of 62 cents extra upon the first 6,452 cleaners delivered, making the price for said first 6,452 cleaners $2.85 each. Upon full performance of the contract by plaintiff said $10,000 so deposited was to be applied by defendant upon final settlement for machines manufactured and delivered under the contract.

Pursuant to said contract, the defendant entered upon the manufacture of said cleaners; but, for some reason not disclosed by the record before us, said contract was not completed within the time specified, and on February 18, 1908, the parties entered into a second contract, also in writing, extending performance of the original contract until April 1, 1909. By said second contract plaintiff agreed that on or before the 18th of June, 1908, it would make good its partial default by depositing with defendant the balance of the $10,000 provided by the original contract. Except as to curing said default and the extension of time for performance, said second contract reaffirmed the contract as originally made.

Plaintiff failed to keep its part of the contract as so modified, by neglecting to make good the deficiency in the $10,000 deposit, and matters appear to have drifted along until December 24, 1908, when the parties entered into a final agreement in writing apparently settling and adjusting all matters between them.

After reciting the making of the original contract between the parties of October 3, 1906, the default of plaintiff in making the full deposit of $10,000 as required by the contract, and that the defendant then had on hand goods, wares, and merchandise purchased by it in anticipation of the completion of said contract, in a sum not exceeding $12,000, and the desirability of terminating the contract and adjusting the differences between the parties arising out of a partial performance of the contract, and to that end to adjust and satisfy all differences and claims between the parties and to release each other from all liability arising from said contract, the said parties contracted and agreed as follows: The plaintiff agreed to execute and deliver to defendant its promissory note for $1,000, dated January 11, 1909, payable in four months from its date, and that said plaintiff would assume and pay any indebtedness of defendant to the D. H. Stoll Manufacturing Company under the latter's contract with said Stoll Manufacturing Company, not exceeding the sum of $1,200. By said agreement of settlement the defendant was to retain as its own property all moneys deposited by plaintiff under the terms of the original contract, and in consideration of said benefits to defendant the latter agreed to sell and

deliver to the plaintiff all such goods, wares, and merchandise (except uncut tin) then in defendant's possession, purchased by it as material to be used in performance of the aforesaid contract for the manufacture of said cleaners, and also all sweepers complete and incomplete and all parts thereof, to be evidenced by a bill of sale to be executed by defendant, particularly describing said articles and merchandise, the title of the same to pass to plaintiff on delivery of the bill of sale, and defendant was to place same on cars at Newark, N. Y., on demand of plaintiff made within 60 days from the date of said contract. Said contract further provided that said goods so sold were to be stored by defendant free of charge where they then were at the risk of the plaintiff for said 60 days, and thereafter at reasonable rates, but always entirely at plaintiff's risk. Said agreement then continues in the following language:

"It is understood and agreed nevertheless that the party of the second part shall retain in its possession all of said property so transferred by said bill of sale as security for the payment of said note of one thousand dollars, and as security for and against any loss, costs or damages under or by reason of said D. H. Stoll Manufacturing Company contract and as security for the performance by party of the first part of its covenants and agreements herein contained relating to said last-mentioned contract, until said note is paid, and until said D. H. Stoll Mfg. Company contract is fully performed or canceled and all liabilities of party of the second part under or by reason of said contract ended, and it is further understood and agreed that party of the first part may sell such goods or any part of them while they are so retained by party of the second part as security of aforesaid at prices and upon terms approved by party of the second part, provided that the goods so sold shall be billed out in the name of the party of the second part and the purchase price thereof received by party of the second part and applied first on the said note, until the same is paid and after that is paid, held for the faithful performance of the terms of this contract as the said D. H. Stoll Company contract, and until said contract is performed or canceled and all liabilities of the party of the second part under the same ended."

The instrument then closes with an agreement on the part of each party to release the other from any and all liability arising out of the original contract and its modifications.

The record does not show whether or not the bill of sale which was to evidence the transfer of title to the merchandise was ever executed; but it is apparent that the parties treated the transaction as a completed sale so far as the articles and personal property which it was agreed should go to the plaintiff was concerned, as a portion thereof was shipped to plaintiff from Newark as stipulated. The $1,000 note was executed and delivered by plaintiff to defendant. Plaintiff failed to pay and discharge the claims of the D. H. Stoll Manufacturing Company as it had agreed, and same were paid by defendant, and plaintiff subsequently gave to defendant its promissory note for $1,010 to cover the amount of the Stoll Company's claim as finally paid by defendant. Plaintiff's two notes were not paid when due, and one thereof was renewed. Finally, on September 21, 1909, defendant, evidently tiring of plaintiff's tardiness in paying its said notes, notified plaintiff that it would on October 1, 1909, sell at public sale the merchandise which it claimed to hold as security for the payment of plaintiff's said note for $1,000, which had finally matured September 11, 1909. Plaintiff re-

ceived this notice, but apparently ignored the same, and on October 1, 1909, the balance of the merchandise mentioned in the agreement of December 24, 1908, remaining in defendant's possession, was sold at public auction; the sum of $477.20 being realized from the sale. This amount was applied by defendant upon its $1,000 note, leaving a balance due thereon of $522.80, besides interest and protest fees.

Thereafter plaintiff brought this action to recover of defendant the sum of $8,250, which it claimed it had paid to defendant, seeking to treat the transaction of December 24, 1908, as a conditional sale by defendant to plaintiff of the chattels and merchandise which defendant had on hand as the residuum of its contract for the manufacture of said cleaners. Plaintiff's position is that when defendant sold the property on October 1, 1909, it violated the provisions of section 65 of the Personal Property Law (Consol. Laws 1909, c. 41), which provides that whenever articles are sold upon condition that the title thereto shall remain in the vendor until the payment of the purchase price or the occurrence of a future event or contingency, and such goods are retaken by the vendor, they shall be retained for the period of 30 days from such retaking, during which period the vendee may comply with the terms of such contract and thereupon receive such property, and that, after the expiration of such period, if such terms are not complied with the vendee may cause such property to be sold at public auction.

Defendant answered in the action denying plaintiff's said contention as to the interpretation to be placed upon their said agreement, and insists that the transaction was not a conditional but an absolute sale so far as the merchandise on hand was concerned, and that such sale was then and there completed, and that the title to said goods passed to plaintiff; the possession thereof being retained merely as security for the payment of the $1,000 note concurrently executed and delivered by plaintiff to defendant and to secure and indemnify defendant for the amount of the D. H. Stoll Company claim. Defendant's contention is that it held said chattels as security, and, plaintiff having defaulted, it had the right to dispose thereof applying the proceeds upon the indebtedness secured. In its answer defendant counterclaimed upon the balance unpaid upon its said $1,000 note, and upon the $1,010 note given to adjust the Stoll Company's claim. No reply to defendant's counterclaim was ever served by plaintiff.

The trial took a strange, and I think unprecedented, course. The action was brought to trial at the Erie Trial Term on November 21, 1912. The evidence was largely documentary and was presented to the court and a jury. At the close of plaintiff's evidence the defendant moved for a dismissal of the plaintiff's complaint and for judgment in defendant's favor upon the counterclaims contained in defendant's answer, and to which plaintiff had not replied. No ruling appears to have been made thereupon. The defendant offered no evidence, and, upon the evidence being declared closed, the defendant renewed its motion made at the close of plaintiff's case. Again, no ruling appears to have been made by the court thereon, but the court then stated that it would "discharge the jury reserving the right in the court at some

future time after an examination has been had and a result reached to direct a verdict in the absence of the jury with the same force and effect as though a verdict were directed here to-day."

The record contains the following additional memorandum:

"August, 1913. Judgment directed in favor of the plaintiff and against the defendant for eight thousand six hundred ten dollars ($8,610), and dismissing the defendant's counterclaims."

Upon such proceedings was the judgment appealed from entered.

[1] The conduct of the trial justice thus outlined was entirely unauthorized and extrajudicial. But counsel for defendant, it would appear from the record, made no objection and took no exception to the course adopted by the justice who presided at the trial, apparently acquiescing in the discharge of the jury and the court's proposal to hold his motions for future consideration, and no attempt has been made to correct the irregularities attending the entry of judgment.

Moreover, I can discover no evidence in the record of the trial in support of plaintiff's allegation that under the contract of December 24, 1908, it paid defendant the sum of $8,250 or any other sum, and said allegation of plaintiff's complaint is denied by defendant's answer. The record appears barren of any evidence to support the verdict attempted to be directed by the trial justice.

However, disregarding the unprecedented procedure leading up to the judgment rendered and the absence of evidence to support it, it seems to me that upon the merits the judgment appealed from should be reversed. The rights of the parties are dependent upon the interpretation which we are to place upon the agreement entered into by the parties on December 24, 1908. The instrument as a whole was intended as a settlement of a long-standing deal between the parties. It adjusted controversies existing between them, and so far as the chattels sold to plaintiff and to be delivered under its terms was a completed sale. While the sale, it was stated, was to be evidenced by a bill of sale executed by defendant, title to pass on delivery of sale bill of sale, and while the record does not disclose whether or not the bill of sale was in fact executed, the transaction was plainly treated by the parties as a completed sale. Some of the goods were delivered and shipped to plaintiff and thereafter sold by plaintiff. The property was all in a deliverable state, and under the provisions of section 100 of the Personal Property Law, as amended by chapter 571 of the Laws of 1911, where there is an unconditional sale of goods in a deliverable state:

"The property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment or the time of delivery, or both, be postponed."

[2] That it was the clear intention of the parties that the title to and ownership of the merchandise in question should at once pass from defendant to plaintiff was clearly evidenced by the following provisions of the contract:

(1) Defendant's agreement to place the goods on board cars at Newark on plaintiff's demand within 60 days from date of contract (afterwards performed as to a part of the goods).

(2) The provision that said goods in the meantime should be stored

by defendant, "but always entirely at the risk of party of the first part" (plaintiff).

(3) The understanding "that the party of the second part (defendant) shall retain in its possession all of said property so transferred by said bill of sale as security for the payment of said note of one thousand dollars, and as security for and against any loss," etc., by reason of said D. H. Stoll Manufacturing Company's contract.

(4) The provision permitting plaintiff to sell said goods or any part thereof, under such restrictions as were provided as to price and application of proceeds to discharge said note and claim, and the fact that plaintiff did in fact thereafter sell some of said goods.

These provisions seem to me to clearly show an intention on the part of both plaintiff and defendant that the title and ownership of the goods should pass to plaintiff, and that defendant's possession thereof was merely to secure it for the unpaid indebtedness of plaintiff. The giving of the note, the assumption of the Stoll Company claim by plaintiff, the surrender of all claim to the moneys deposited, and the sale of the goods were all acts, to be and become contemporaneously effectual. From a careful perusal of the contract, I find no provision showing any intent of the parties that the ownership of the chattels should remain in defendant. Unless there was such an intent, the sale was unconditional.

[3] Ordinarily in cases of conditional sale the property sold is delivered to the conditional vendee. Section 65 of the Personal Property Law prescribes the procedure to be adopted by a conditional vendor on retaking the property conditionally sold. Here there was no retaking, as the property never passed from defendant's possession, but was retained as a pledge and security for the payment of plaintiff's obligations.

[4] Plaintiff having defaulted, it was clearly within defendant's power under the terms of the contract to sell and dispose of the personal property which it held as security.

I am of the opinion that the trial justice erred in awarding plaintiff judgment herein, and that defendant's motion to dismiss plaintiff's complaint and for judgment on the counterclaims pleaded in defendant's answer should have been granted.

I think the contract of December.24, 1908, operated as an unconditional contract of sale from defendant to plaintiff of the merchandise and personal property therein mentioned, title thereto at once passing to plaintiff; that defendant retained possession thereof solely as security for the payment by plaintiff of its $1,000 note and for its agreement to pay the D. H. Stoll Company claim; and that, plaintiff having defaulted in meeting its said obligations, the defendant acted within its rights in advertising and selling the property and in applying the proceeds upon its note; that the defendant is entitled to a dismissal of plaintiff's complaint and judgment absolute against plaintiff to the amount of its counterclaims, with costs in trial court and upon this appeal. All concur.