18928.  MACK *v.* PARDEE.

DECIDED FEBRUARY 21, 1929.

*Branch, Snow & Alexander,* for plaintiff in error.

*H. H. Merry, E. K. Wilcox,* contra.

BELL, J. R. S. Pardee brought suit against E. E. Mack for $13,045, alleging: On July 1, 1926, the plaintiff sold and delivered to the "defendant ...... shares of the capital stock of Southern Saw Mill Company, a corporation," the consideration of which was an amount due upon a note held by Mack against Pardee, and cash in the sum sued for, to be paid by Mack "at once." The defendant has failed and refused to pay the same though requested to do so. The defendant in his answer made a general denial of the plaintiff's allegations, and filed no other plea. The jury returned a verdict in favor of the plaintiff; whereupon the defendant moved for a new trial on the general grounds, and on two special grounds complaining of errors in the charge of the court.

Counsel for the plaintiff in error insist in their brief that the evidence shows that the alleged contract was unenforceable under the statute of frauds, and thus that a new trial should have been granted upon the ground that the verdict was contrary to the evidence and to law. But, in view of the record as made, no question as to the applicability of the statute can be considered under the general grounds of the motion for a new trial in this case. In *Bridges* v. *Williams,* 148 *Ga.* 276 (96 S. E. 499), the Supreme Court held: "Where the statute of frauds was not pleaded, and there was no demurrer, motion for nonsuit, or objec-

tion to testimony, so as to invoke a ruling in the court below on that subject, this court will not grant a new trial on the ground that the verdict is contrary to law because it appears that the contract sought to be enforced should have been in writing." See also *Tift* v. *Wight,* 113 *Ga.* 681 (2) (39 S. E. 503); *Brannen* v. *McElveen,* 19 *Ga. App.* 518 (91 S. E. 913). Other cases to the same effect might be cited.

An important question is presented, however, as to whether there was such a completed sale as would authorize the form of action which the plaintiff adopted. The petition is framed upon the theory of an executed transaction, that is, one in which the stock was sold and delivered, leaving nothing else to be done except for the defendant to pay the price agreed on. It appeared from the plaintiff's testimony that the stock at the time of the sale was already in the possession of the defendant, having been pledged to him by the plaintiff as security for a note made by the plaintiff to the defendant, upon which there remained due a balance of $79,775.

The number of shares was 650, represented by four certificates, as follows: Two to the plaintiff's wife, one for 40 shares issued in 1918, and the other for 360 shares issued in 1922; two certificates to the plaintiff, one for 25 shares issued in 1920, and one for 225 shares issued in 1922. After first being transferred in writing by the apparent owner, each of the four certificates was pledged, as above stated, on or soon after the date of issue, the transfer by Mrs. Pardee having been made in blank, and the transfers by the plaintiff having been made specifically to Mack, the pledgee. The plaintiff claimed upon the trial to have owned all stock at the times when he pledged the certificates respectively to the defendant, and also at the time of the alleged sale.

The plaintiff testified: "I sold my stock to Mr. Mack in the early part of June, 1926, and had a definite understanding as to the purchase and sale. Mr. Mack had the stock certificate the last time I saw it; it was delivered to him and accepted by him and he was to pay for it $13,045. That was not the total price for the 650 shares; it was the balance due after surrendering my note. I owed Mr. Mack some money at that time. It was represented by a note. I sold my stock to Mr. Mack and it was accepted by him. I did not pay him the money I owed him at that time. I surrendered the stock certificate to him. I paid him by selling him

the stock and he accepted it in payment of all that I owed him and there was a balance coming to me of $13,045. He has never paid it, but he promised to pay it. It was a cash transaction; he was to pay me at that time or within a very few days. I insisted on his paying, but he has never done so. . . I sold him my stock and we agreed on the book value. The book value we agreed on was $142.50 per share and that is what he agreed to pay me. Mr. Mack owes me the amount for which I am suing, and it is just, true, due, and unpaid. . . We figured the thing down, Mr. Mack figured by the interest he gave me according to the payments, figured up $27,275 interest on the note, which left a balance due me on the book value at that time of $13,045. That was in June of last year. Mr. Mack told me he did not have the money to pay me right then, but would get it as quick as he could. Nothing additional was done about my note or about the transfer of the stock. The stock was already in his possession. It had been transferred to him as collateral security. No change was made; no stock was issued. It was already transferred to him. Nothing was done with reference to delivering up the note which Mr. Mack still has. . . We did not have an agreement in June that at some time he would buy the stock back, but that at some future date he would pay me for it. He told me he had agreed to the price and he would take it. He told me the first of July when I left that he had a long-distance conversation with Mr. Justice and was going east to see Mr. Justice, who was going to put up more money into the business, and that he would pay me next week. I had not at that time demanded the note. I did not care anything about the note; I considered it paid; all I wanted was to get the balance due. I considered it paid by our agreement. . . When we actually closed the transaction we had a definite agreement as to the amount that was to be paid. It was the understanding that he was to pay me then. He did not pay me then. He said he didn't have it right then. He promised me he would get it during the month of June. . . . At the time Mr. Mack and I were negotiating on the final price of the stock we made up the figures on which we based the price jointly. We were in the office of the Southern Sawmill Company. . . Mr. Mack and I made up a complete statement which reflected what both agreed upon was the proper book value of my stock on that date, and I agreed to sell and he agreed to buy. I

sold on that basis and he bought on that basis. I do not owe that note for $94,000. I paid it by selling Mr. Mack the stock. . . I have never made any demand on Mr. Mack in person or in writing for my note which he holds. At the time the transfer was made on those stock certificates it was made for the purpose of security and not to transfer title. I do not claim that I sold the stock to Mr. Mack at the time those transfers were signed. . . The stock still showed on the books in my name, but showed on the stock certificates that he could transfer it when it became necessary to hold his title. New stock certificates were not issued to him. In June, 1926, when I claim that I sold him the stock, it was exactly that way as he held it in June, 1918. I never knew what was done with them. So far as I know, nothing was done in June to alter the status of the record at all. I supposed he had transferred it; nothing was said about that. He understood he had bought the stock. I did not make a formal demand on him to transfer. I presumed that he would, because he promised to pay me it the following week and he had the certificates authorizing him to transfer it. He had it in his power to transfer that stock on the books of the company. It was Mr. Mack's business to have the stock reissued."

While the plaintiff's testimony indicates an impression on his part that all the stock was pledged in 1918, which could not have been true in view of the dates of the several certificates and of the transfers appearing thereon, this discrepancy between the testimony and the documentary evidence did not as a matter of law destroy the probative value of the testimony, and it is undisputed that all the stock was in the hands of the defendant as security for the indebtedness, at the time of the alleged sale.

As to the certificates issued to Mrs. Pardee, the plaintiff testified: "When the stock was issued to her she transferred it in blank, gave it back to me on the same day, to be my stock, and I took it and gave it to Mr. Mack; he accepted it as my stock. I don't remember what I said at the time I delivered it to him. He took it and put it with the other certificates in his private drawer."

As will be seen from the above statement, the plaintiff's case rested entirely upon oral testimony, unaccompanied by proof of any physical change in the status of the property, or of any act by the vendee, asserting dominion over it. The certificates had been

delivered previously in pledge, and nothing further was done at the time of the alleged sale except that the parties agreed on the purchase-price, with the plaintiff verbally relinquishing his interest and the defendant in like manner accepting the same.

Was this a completed sale, or was it merely a contract to make a sale? If the sale was executed, then the plaintiff could sue for the purchase-price; whereas, if there was only an executory agreement to make a sale, such an action would not be maintainable. A breach of an executory contract for the purchase of goods will not support an action upon an open account for the price thereof, but the vendor's remedy is a suit for damages for the breach. *Dilman* v. *Patterson Produce Co.*, 2 *Ga. App.* 213, 216 (58 S. E. 365); *Maddox* v. *Wagner*, 111 *Ga.* 146 (36 S. E. 609); *Oklahoma Vinegar Co.* v. *Carter*, 116 *Ga.* 140 (2) (42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112).

"Three elements are essential to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties." Civil Code (1910), § 4106. "Generally, the delivery of goods is essential to the perfection of a sale. The intention of the parties to a contract may dispense therewith; delivery need not be actual; constructive delivery may be inferred from a variety of facts. Until delivery is made or dispensed with, the goods are at the risk of the seller." Civil Code (1910), § 4125.

If, under the facts as testified to, the title passed to the defendant, and nothing remained to be done except for the defendant to pay the purchase-price, including surrender of the plaintiff's note, the action was rightly brought, and the plaintiff was entitled to recover. "When the terms of the sale are agreed on, and the bargain is struck, and everything which the seller has to do with the goods is complete, the contract of sale becomes absolute, as between the parties, without actual payment or delivery, and the property and risk of accident to the goods vest in the buyer." *Woodward* v. *Solomon*, 7 *Ga.* 246, 253. "Where the terms of a special agreement have been performed on one side, and nothing is to be done on the other but to make a money payment, such payment may be enforced by indebtitatus assumpsit." *Hancock* v. *Ross*, 18 *Ga.* 364 (1). See also *Allen* v. *Hollis*, 31 *Ga.* 143, 146; *Butler* v. *Lawshe*, 74 *Ga.* 352 (4); *Hill* v. *Balkcom*, 79 *Ga.* 444 (5 S. E.

200); *Wholesale Mercantile Co.* v. *Jackson,* 2 *Ga. App.* 776 (2), 782 (59 S. E. 106); *Good Roads Machinery Co.* v. *Neal,* 21 *Ga. App.* 160 (5) (93 S. E. 1018). In 35 Cyc. 192, it is said that "If at the time of the sale the property is already in the possession of the buyer no formal delivery is necessary to complete the transfer and fix his liability." In such a case "no further act of delivery is ordinarily essential." Id. 311.

In view of the above principles, we think the evidence was sufficient to authorize the inference of a completed sale, and thus to warrant the verdict in favor of the plaintiff, where no question as to the applicability of the statute of frauds was involved. For reasons stated above, no decision is here made as to whether the sale was so executed as to render the statute of frauds inapplicable.

While the plaintiff's testimony tended to show that the price of the stock was to be paid at once or presently, and we have dealt with the case as made in the record, we do not intend to say that an agreement for the immediate payment of the purchase-price is essential to an executed sale. There may be such a sale even though the parties agreed upon a later date for such payment, and a sale which is otherwise in fact executed is not executory merely because it is *made on credit.* 35 Cyc. 266.

2. The court charged the jury as follows: "With reference to this particular case, if the price was fixed and the delivery was complete it took it without the statute of frauds. By the delivery being complete I mean this: that if the plaintiff delivered the stock to the defendant as collateral only, that would not be such complete delivery as would constitute a sale. On the other hand, if it was agreed between the plaintiff and the defendant that the balance due was to be paid as alleged in the petition, and that the defendant was to receive this stock in fee simple, not as collateral but in fee simple,—that he was to be the absolute owner of it,— then and in that case the delivery would be complete."

The motion for a new trial complains only that the following language of this excerpt, to wit: "If it was agreed between the plaintiff and the defendant that the balance due was to be paid as alleged in the petition, and that the defendant was to receive this stock in fee simple," implied a future payment and a future delivery, and was calculated to confuse and mislead the jury, in that it was susceptible of the construction that if the defendant was at

some future time to pay the balance of the purchase-price and not until then to receive the stock in fee simple, the jury would be authorized to find for the plaintiff, and that such an agreement would satisfy the requirements of the statute of frauds.

There is no merit in this contention. The charge excepted to must be construed in the light of the petition and the evidence. The petition alleged that the stock was sold and delivered and that the defendant was to pay the amount of the purchase-price, less the note, at once. There was no issue under the evidence as to an agreement for a future sale or delivery.

The plaintiff testified to a completed transaction, while the defendant testified there was neither this nor any other sort of transaction between him and the plaintiff with regard to the stock. The charge could not reasonably have been construed as referring to a contract for a sale to be consummated in the future. The issue was only as to whether there was a contract which was executed, or no contract at all.

The charge plainly referred to this issue and was clearly intended to submit only the question of whether the defendant assented to the present and immediate acceptance of the stock as owner, in terms of the agreement as testified to by the plaintiff. We do not construe the assignment as complaining of any error in the above instruction unless it should or might be interpreted as referring to an executory contract. In other words, there appears to be no contention that the statute of frauds would be applicable, or that the charge would be in any respect erroneous, unless the agreement was in reference to a sale to be executed in the future.

The charge was not subject to the criticism made upon it, and there was no error in overruling this ground of the motion for a new trial.

3. Error is assigned upon the following charge of the court: "If you find from the evidence that Mrs. Pardee in writing gave or conveyed in fee simple the stock issued in her name to R. S. Pardee, R. S. Pardee has a right to sell said stock, transferring of said stock in blank raises the presumption that the person holding said stock had a right to dispose of same. This presumption is of course rebuttable."

It is complained that this charge was error because it was not

a correct statement of the law and was inapplicable to the facts. It is set out that the evidence showed that a portion of the stock had been originally transferred by the plaintiff to his wife for a fraudulent purpose, that is, to avoid a certain liability to which the plaintiff might later become subject, and was retransferred by Mrs. Pardee to the plaintiff for the sole purpose of being placed with the defendant as collateral security for the plaintiff's debt. It is further contended that the evidence wholly failed to show that Mrs. Pardee authorized any sale of the stock by the plaintiff to the defendant, in fee simple, and, therefore, that the above charge, so far as it authorized the jury to find for the plaintiff that part of the purchase-price representing the value of the stock of Mrs. Pardee, was erroneous, being "unauthorized by the evidence and by the law."

The defendant did not, either in his pleadings or in his evidence, make any issue as to the plaintiff's ownership or right to sell. This, so far as appears, was not questioned during the trial, and, as stated in the preceding division, the sole issue was as to whether there was an executed sale or no agreement whatsoever between the parties.

Furthermore, a wife may give property to her husband, but a gift will not be presumed. The evidence to support it must be clear and unequivocal, and the intention of the parties must be free from doubt. Civil Code (1910), § 3010; *Rich* v. *Rich,* 147 *Ga.* 488 (94 S. E. 566).

As hereinbefore indicated, the evidence showed that the stock, which was issued to Mrs. Pardee, was later transferred by her in blank and delivered to the plaintiff. He testified that *she gave it back to him, to be his stock,* and that he took it and delivered it to Mr. Mack. In the absence of other evidence, this was sufficient to authorize the inference of a gift, and the transfer and delivery of the stock to the plaintiff, under these circumstances, certainly raised a prima facie presumption that he thereby became the owner, with the right to sell and dispose of such stock at will. Civil Code (1910), § 2219; *Bank of Culloden* v. *Bank of Forsyth,* 120 *Ga.* 575 (48 S. E. 226, 102 Am. St. R. 115); 14 C. J. 675.

The instruction complained of contained a correct statement of the law, and was not inapplicable to the facts as disclosed by the evidence.

If the plaintiff originally directed that the stock be issued to his wife, in order to defeat some possible liability against himself, the person thus sought to be defrauded, and not the defendant, would be the proper party to attack such transaction between them. *Massell* v. *Fourth National Bank,* 38 *Ga. App.* 601 (4) (144 S. E. 806). But if the wife later transferred and delivered the stock back to the husband, there would seem no cause for complaint by any one, since by the latter transaction the stock was restored to the rightful owner.

There was no error in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*