GROVER C. LIGON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 84765.    Promulgated April 26, 1938.

*Joshua W. Miles, Esq.*, for the petitioner.
*Carroll Walker, Esq.*, for the respondent.

OPINION.

ARNOLD: The sole issue for our determination is whether petitioner sustained a deductible loss in the tax year from the sale of the stock under the circumstances set forth in our findings of fact. That the sale was made and the purchase price paid November 15, 1933, is not in dispute. Neither is the amount of the loss in dispute. The respondent filed no brief, but, as we understand his position, from the statements made at the hearing and from the course of his cross-examination, he relies solely on the fact that, as the stock was up for collateral to secure an indebtedness of petitioner and was not delivered to the purchaser by the bank until October 25, 1935, the loss was not sustained in 1933.

The petitioner claims that he completely divested himself of all interest in or title to the stock by the transaction of November 15, 1933, thereby sustaining the loss in question. His interest in the stock pledged was that of a pledgor, who retains the general property or title in the thing pledged until it is sold under foreclosure by the pledgee. The pledgee acquires only a special interest or property in the stock during the continuance of the pledge, *Jennings* v. *Gallagher*, 152 Atl. 802; *Yeatman* v. *Savings Institution*, 95 U. S. 764; *In re T. A. McIntyre & Co.*, 181 Fed. 955. (See note at 4 L. R. A. 305.)

The interest retained by the pledgor in his pledged stock can be assigned and transferred the same as any other property right, and the pledgor's assignee, at least where the pledgee has notice of the transfer, succeeds to all the rights in the property possessed by the pledgor. *Brown* v. *Hotel Association of Omaha*, 63 Neb. 181; 88 N. W. 175; *Fuller* v. *Bassett's Estate* (Mich.), 224 N. W. 639, 642; *Bumiller* v. *Bumiller*, 179 Cal. 119; 175 Pac. 897; and *Mack* v. *Pardee*, 147 S. E. 147.

At the time petitioner sold the stock to Mallonee he made a complete disclosure of the pledge of the stock and the lien which the bank had. Mallonee was not only advised of this fact, but he testified that he made an independent investigation with respect thereto

before he purchased the stock. Mallonee was advised by the bank, and knew from the treasurer of the bank, that petitioner's loan was undersecured and that delivery of the pledged stock would not be made unless the $200 was paid on the loan, the loan reduced, the collateral increased in value, or additional collateral posted. Nevertheless, Mallonee, with full knowledge of these facts, paid petitioner cash for the latter's interest in the stock pledged. The intention of the parties to transfer ownership of the stock subject to the lien of the bank is fully demonstrated by the notice that petitioner gave the bank advising them of the sale of the 400 shares of stock and that delivery thereof should be made to Mallonee. Mallonee in no way conditioned his purchase of the stock in question upon delivery thereof, but bought petitioner's interest and title subject to the lien of the bank. Under these circumstances we agree with the petitioner that he had divested himself of all ownership in the stock in question November 15, 1933, when he received the purchase price.

Deductions under the income tax statutes, however, depend not so much upon refinements of title as they do upon meeting the requirements therein stated for deductions. A loss, to be deductible from gross income, must have been sustained in the taxable year, sec. 23 (e), Revenue Act of 1932; and must usually be evidenced by closed and completed transactions, art. 171, Regulations 77; *Lucas* v. *American Code Co.*, 280 U. S. 445. The year of deductibility of a loss is determined by a practical test, *Lucas* v. *American Code Co., supra;* and the intention of the parties to the transaction is one of the controlling elements in determining whether the transaction was closed and completed in the taxable year. *Dee Furey Mott*, 35 B. T. A. 195; *Ruml* v. *Commissioner* (C. C. A., 2d Cir.), 83 Fed. (2d) 257, reversing *Beardsley Ruml*, 31 B. T. A. 534; *Hoffman* v. *Commissioner*, 71 Fed. (2d) 929, reversing *Samuel L. Hoffman*, 28 B. T. A. 1264.

In *Ruml* v. *Commissioner, supra,* the court, after stating that it was primarily concerned with whether or not the loss evidenced by the sale was realized within the meaning of that term as applied to income taxation, stated as follows:

* * * But when the evidence of realization is a sale of personal property [stock], it is not always necessary to deliver the property before there may be a deduction of a loss. It is enough that the obligation to deliver is so fixed that the loss is reasonably certain in fact and ascertainable in amount. *Lucas* v. *American Code Co.*, 280 U. S. 445. * * * Here the transaction was so far advanced in December that the petitioner was bound to deliver the stock to the broker at a price which was then determined by the sale the broker made. That sufficed to make the loss certain and established the amount. Moreover, the intention of the petitioner and the broker being that the particular shares then owned by the petitioner should be delivered to the broker, it follows that title to them passed to the broker in December. *Hoffman* v. *Commissioner*, 71 F. (2d) 929 (C. C. A. 2). The loss was accordingly all realized in 1928, and so was deductible in that year.

In *Hoffman* v. *Commissioner*, *supra*, the court, in reversing the Board as to the year in which a loss was sustained from the sale of stock, said:

\* \* \* The ground upon which it [Board] rested the conclusion that title did not pass on July 9th when the certificates were indorsed and delivered to the attorney was that he was to hold possession of them until Dorman should perform his part of the bargain. But the law is well settled that nondelivery of possession would not preclude title to the stock passing forthwith to Dorman if such was the intention of the parties. *Hatch* v. *Oil Co.*, 100 U. S. 124, 132, 25 L. Ed. 554; *Hammer* v. *United States*, 249 F. 336 (C. C. A. 2); *Dahlinger* v *Commissioner*, 51 F. (2d) 662 (C. C. A. 3); *Havenson* v. *Commissioner*, 51 F. (2d) 664 (C. C. A. 3); *Sanitary Carpet Cleaner* v. *Reed Mfg. Co.*, 159 App. Div. 587, 145 N. Y. S. 218; *Sherwood* v. *Commissioner*, 8 B. T. A. 103; *Swenson* v. *Commissioner*, 14 B. T. A. 675. Not only did the seller, the buyer and the party with whom the certificates were deposited testify that the sale was intended to be consummated on July 9th, but statements and conduct of the parties at that time and thereafter were entirely consistent with such intention. The loss on the sale was sustained in 1926.

The record in this proceeding convinces us that petitioner intended to divest himself of all interest in the stock at the time he received the purchase price and that it was the intention of the purchaser to buy the stock subject to the claim of the bank, deferring actual delivery of possession of the certificates to some time in the future. Under the facts and circumstances herein, the failure to deliver the certificates does not prevent the transaction of November 15, 1933, from being a closed and completed transaction. In view of the foregoing, petitioner is entitled to deduct the loss realized upon the sale of his stock on November 15, 1933.

For failure of proof on the second assignment of error we sustain the Commissioner on that issue.

*Decision will be entered under Rule 50*