**James W. WILLIAMS,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 78–1581**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1978.

* Rule 18, 5 Cir.; See *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Howard A. Lang, Jr., Houston, Tex., for petitioner-appellant.

M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Acting Chief, U. S. Dept. of Justice, Stuart E. Seigel, Acting Chief Counsel, Washington, D.C., for respondent-appellee.

Before MORGAN, CLARK and TJO-FLAT, Circuit Judges.

PER CURIAM:

James W. Williams appeals an order of the tax court finding a deficiency in his income taxes for the year 1971 in the amount of $87,810. Finding the disposition of the tax court to be correct, we affirm on the basis of that court's opinion, which is appended hereto.

*Appendix*

T. C. Memo. 1977–401

UNITED STATES TAX COURT

MEMORANDUM OPINION

SCOTT, Judge:

Respondent determined a deficiency in petitioner's income tax for the calendar year 1971 in the amount of $87,810. The issue for decision is whether petitioner sustained a loss in 1969 from his investment in Westec stock resulting in a capital loss carryover to the year 1971.

All of the facts have been stipulated and are found accordingly.

At the time the petition in this case was filed petitioner lived in Texas. Petitioner and his wife, Phyllis W. Williams, filed a joint Federal income tax return for the calendar year 1971. For the calendar year 1969, petitioner and his wife filed an original joint income tax return and an amended return.

Prior to 1966, petitioner was chairman of the board of Westec Corporation (Westec). As of August 25, 1966, petitioner and his wife owned 17,400 shares of stock of Westec. Until that day, stock of Westec was traded on the American Stock Exchange. On August 25, 1966, trading in Westec stock was suspended by the Securities and Exchange Commission, and this suspension remained in effect through May 4, 1969, at which time the suspension was canceled. Trading in Westec stock was also suspended in Texas, and the order suspending trading in this stock in Texas was canceled as of May 5, 1969.

On September 26, 1966, Westec filed a voluntary petition with the United States District Court for the Southern District of Texas for a reorganization of the company pursuant to Chapter X of the Bankruptcy Act. Orville S. Carpenter was named trustee for Westec in the Chapter X reorganization. At the time the petition of Westec for reorganization was filed, petitioner had pledged his 17,400 shares of Westec stock as security for loans with three banks. Petitioner had pledged 5,500 shares to the Capital National Bank of Houston, 6,900 shares to the First City National Bank of Houston, and 5,000 shares to the Waxahachie Bank and Trust Co. of Waxahachie, Texas.

On February 26, 1968, the United States Bankruptcy Court, in which was pending Westec's petition for reorganization under Chapter X of the Bankruptcy Act, issued an

order outlining the procedure to be followed in proving stock interests in Westec. The three banks to which petitioner's Westec stock was pledged filed proofs of security interest in accordance with this order of the Bankruptcy Court. In September 1968, Mr. Carpenter, the trustee of Westec, filed objections to the proofs of stock or security interest filed by the banks.

On August 23, 1968, the trustee, Mr. Carpenter, filed a civil suit against 93 persons, including petitioner, alleging various violations of Federal securities laws and seeking damages. The original complaint was amended by a first amended original complaint filed July 7, 1971. The complaint against petitioner and the 92 other persons was filed by the trustee in furtherance of an amended plan of reorganization of Westec filed on January 24, 1969. The amended plan as filed provided for six classes of creditors and three classes of stockholders. Stockholders Classes 1 and 2 were, respectively, preferred stockholders and common stockholders other than Stockholders Class 3. Stockholders Class 3 was defined in the plan as follows:

*Stockholders Class 3—Subordinated Stockholders.* Holders of Westec preferred or common stock who, as determined by the Court in these proceedings, are not entitled on equitable principles to participate on a parity with other stockholders.

Paragraph IV of the amended plan of reorganization which made provisions for the payment of administrative expenses, allowances and allowed claims, provided (subparagraph 9) as follows with respect to Class 3 subordinated stockholders:

9. *Stockholders Class 3—Subordinated Stockholders.* The stock interests of preferred and common stockholders against whom Trustee has filed objections prior to entry of order approving the Plan and who are found by the Court, after notice to the affected stockholders and hearing, not to be entitled on equitable principles to participate on a parity with other stockholders shall be subordinated or cancelled, as the Court shall find appropriate under the circumstances.

In October 1968, petitioner filed an answer to the civil suit filed against him on August 23, 1968, by Mr. Carpenter, the trustee. This answer stated in pertinent part as follows:

At the present time this Defendant, James W. Williams, is also Defendant in two criminal prosecutions in this Court. These prosecutions are not final. The allegations of the indictments overlap with the allegations of this original complaint. For such reasons it is necessary that this Defendant, at this time, deny the allegations of Paragraphs 1 through 163, inclusive.

While the objections to proofs of stock interest filed by Mr. Carpenter in the Chapter X reorganization proceedings of Westec to the claims of the Capital National Bank of Houston, the First City National Bank of Houston, and the Waxahachie Bank and Trust Co. of Waxahachie, Texas, were pending adjudication, these banks were each issued escrow certificates for the amounts of stock of Westec held by them as security for their loans to petitioner.

On January 30, 1969, Mr. Carpenter, as trustee, filed with the Bankruptcy Court a Report of Trustee as to List of Validated Common Stockholders. Petitioner was not on this list. The amended plan of reorganization filed by the trustee on January 24, 1969, was approved by the United States District Court for the Southern District of Texas on February 28, 1969. The order approving the plan provided in part that for the purposes of determining classification for voting on the plan, the list of validated common stockholders filed on January 30, 1969, shall constitute the list of stockholders entitled to vote on the plan as Stockholders Class 2, and that all holders of preferred stock shall be entitled to vote on the plan as Stockholders Class 1, whether or not objections have been made to their proofs of stock interest. The order of approval further provided that the trustee, Mr. Carpenter, should transmit a copy of the plan of reorganization to each creditor and stockholder affected thereby appearing on Wes-

tec books, with appropriate forms for acceptance of the plan by the creditors and stockholders, and allowed the trustee until April 21, 1969, to report to the court the number of acceptances received and set a date for hearing on the plan.

Pursuant to the trustee's plan of reorganization, Westec was reorganized and is currently in business as Tech-Sym Corporation (Tech-Sym). Westec never totally suspended its business activities. During the period in which trading in its stock was in effect, it continued limited business activities under strict control of the trustee, Mr. Carpenter.

On June 1, 1972, the trustee in bankruptcy filed with the District Court a motion for order approving withdrawal of objections as to the stock interest held by First City National Bank of Houston. The withdrawal of objections applied specifically to petitioner's 6,900 shares of stock held by that bank. On June 26, 1972, the order approving the withdrawal of these objections was entered by the United States District Court for the Southern District of Texas. On April 20, 1976, the trustee filed a similar motion with respect to withdrawal of objections to security interest claimed by Capital National Bank of Houston, and the court on June 3, 1976, approved the motion for such withdrawal. On April 22, 1976, the trustee filed jointly with the Waxahachie Bank and Trust Co. of Waxahachie, Texas, a motion for the court to enter an order authorizing and approving the compromise and settlement of objections to stock interests made by the trustee to the claim of the Waxahachie Bank and Trust Co. This motion, which was granted on June 3, 1976, withdrew objections as to the claim with respect to the stock pledged to that bank by petitioner.

By joint stipulation and motion filed June 26, 1975, which was approved by the United States District Court for the Southern District of Texas on July 31, 1975, the trustee of Westec, Mr. Carpenter, and petitioner settled as to petitioner the civil suit initiated by Mr. Carpenter on August 23, 1968, against petitioner and others. Under this settlement, petitioner agreed to transfer to the trustee any Westec stock which he then held and further agreed to assign to the trustee all interests he had in any other Westec stock or escrow stock certificates and the securities represented thereby.

The Tech-Sym stock issued to Waxahachie Bank and Trust Co. of Waxahachie, Texas, is currently in possession of that bank. The Tech-Sym stock issued to Capital National Bank of Houston was returned to petitioner sometime after June 26, 1975, and, in accordance with his agreement assigning any interest he had in such stock to Mr. Carpenter, this stock was turned over to Mr. Carpenter. The Tech-Sym stock issued to First City National Bank of Houston is currently being held by that bank. Petitioner has an arrangement with First City National Bank of Houston for liquidation of his loan. Upon such liquidation, the Tech-Sym shares will be turned over to petitioner and, under the terms of petitioner's agreement in settlement of the suit against him by Mr. Carpenter, petitioner will be obligated to turn over such shares to Mr. Carpenter.

The stock of Westec has never become worthless.

Petitioner was indicted on January 30, 1968, on various counts of security and mail fraud. In addition, another criminal action against petitioner was brought by a criminal information. After a jury trial, petitioner was convicted on July 11, 1968, on all charges of the indictment in the first case and on October 4, 1968, after a plea of not guilty, was convicted in the second criminal action. Petitioner appealed these convictions. On December 11, 1973, an amended judgment and commitment was entered by the United States District Court for the Southern District of Texas in each of these criminal cases. Each Amended Judgment and Commitment stated in part:

Defendant's convictions on all counts were affirmed on appeal. *United States v. Williams*, 447 F.2d 1285 (5th Cir. 1971) (en banc) rev'g 424 F.2d 344 (5th Cir. [1970] 1971) (panel decision). A writ of certiorari was denied, 405 U.S. 954 [92

S.Ct. 1168, 31 L.Ed.2d 231] (February 28, 1972), *reh. denied* 405 U.S. 1048 [92 S.Ct. 1308, 31 L.Ed.2d 591] (April 3, 1972).

Petitioner on his amended return filed for the year 1969 claimed a loss of $182,872.50, which he described as "Worthless as of 1–30–69 by order of Bankruptcy Trustee in issuing 'List of Validated Common Stockholders'," of the 17,400 shares of Westec stock which he had pledged to the Capital National Bank of Houston, the First City National Bank of Houston and the Waxahachie Bank and Trust Co. of Waxahachie, Texas. On this amended return petitioner noted that because of the capital loss limitation there was no adjustment to his income for the year 1969, but that capital loss carryovers to future years would be claimed from this transaction.

On his 1971 return, petitioner claimed a capital loss carryover based on the loss he had claimed on the Westec stock in 1969. Respondent disallowed the claimed capital loss in 1969 from the Westec stock and therefore disallowed the claimed capital loss carryover to 1971 based on a capital loss carryover from this transaction.

Although petitioner on his return claimed a deduction for a capital loss in 1969 in the amount of $182,872.50 for worthless stock, in his brief in this case he does not argue that the stock itself was worthless in 1969 and, in fact, has stipulated that the Westec stock was not worthless at any time. Petitioner's argument in his brief is that in substance he made a sale or exchange of his 17,400 shares of Westec stock in 1969 and, therefore, is entitled to a capital loss in that year. To the extent his capital loss as he computed it in 1969 exceeded reported capital gains for the years 1969 and 1970, petitioner contends that a portion of the loss was properly carried forward to 1971. Petitioner argues that the sale or exchange of his stock occurred in 1969 by virtue of his surrender of the 17,400 shares of stock in that year. Petitioner recognizes that there was no actual surrender by him of the stock in that year but argues that effectively he surrendered his stock since at no time did he file a proof of

interest in the bankruptcy proceeding and was not included on the list of validated stock shareholders prepared by the trustee in bankruptcy which was filed with the court on January 30, 1969.

There is nothing in this fully stipulated case to support petitioner's statement that at no time did he file a proof of stock interest in the bankruptcy proceeding. However, whether he filed such a proof of interest is immaterial to the issue here since in fact the banks that had the stock pledged to them did file such proofs of interest for their claim with respect to petitioner's stock. It is clear from this record that the fact that a stockholder was not included by the trustee on the list of validated common shareholders filed on January 30, 1969, meant merely that the trustee questioned the right of such shareholder to receive stock in the reorganized corporation. In fact, these stockholders were listed as Class 3 stockholders in the plan for reorganization and the plan made it clear that their rights were being questioned by the trustee. It is also clear that the rights of such stockholders were not settled when the plan was approved. The plan of reorganization merely provided that such of those stockholders as were found after adjudication by the court not to be entitled to participate in the distribution of stock of the reorganized corporation would not participate. This adjudication with respect to the banks' claims to petitioner's stock did not take place until well after 1969. It was not until 1975 that petitioner, in settlement of the civil suit against him, assigned any interest he had in the Westec stock, including that he had pledged to the banks, to the trustee. On the basis of this record, we find no facts to support petitioner's contention that he made a sale or exchange of his stock in 1969.

As petitioner recognizes, in order to be deductible, a loss must be realized in the taxable year and the loss must be fixed by some identifiable event ending the interest of the taxpayer in the property. *Shoolman v. Commissioner of Internal Revenue*, 108 F.2d 987 (1st Cir. 1940), affg. a Memorandum Opinion of this Court.

Petitioner points out that section 1.165–1(b), Income Tax Regs., following the provision that to be allowable a loss must be evidenced by a closed and completed transaction fixed by an identifiable event, states —"substance and not merely form shall govern in determining a deductible loss." He argues that under this provision he should be entitled to the loss he claims since in substance he had sustained the loss. In our view, as long as petitioner was contesting the civil suit filed against him he had not in substance sustained any loss. He points to his criminal convictions as indicating that he was unlikely to be successful in the civil suit. However, his criminal convictions were on appeal in 1969 and the indication from the record is that his conviction was not affirmed on appeal until 1971. Furthermore, even if the conviction had been final in 1969, the record here does not show that the criminal case would necessarily control the civil case. Also, in 1969 petitioner's stock was still pledged for loans he had received from three banks and there is no showing in this record that his Westec stock might not have been sold to discharge these loans. Had this been done, petitioner might have effectively obtained the benefit of the sale by having his indebtedness to the banks decreased.

On this record petitioner has failed to show any sale or exchange of his stock in 1969 or that his stock was worthless in that year.

The cases relied on by petitioner are all distinguishable from the instant case. *Joyce v. Commissioner*, 42 T.C. 628 (1964), involved gains from the sale of stock pledged by the taxpayer involved in that case as security for a bank loan. The stock was sold in the year there involved by the bank and the proceeds of the sale applied to the taxpayer's indebtedness to the bank. We held that the taxpayer realized the gain on this sale in the year the stock was sold by the bank. Another issue in that case was whether the taxpayer realized gain in 1958 on a sale of stock made by his agent in that year. The facts showed that the agent received payment for the stock in 1958 but did not transfer the funds to the taxpayer until 1959. We held that the taxpayer real-ized the gain in 1958 when his agent completed the sale and not in 1959 when the funds were actually sent to him by his agent.

*Ligon v. Commissioner*, 37 B.T.A. 763 (1938), involved a sale by a taxpayer of his retained interest in stock which was pledged for an indebtedness. In that case, we held that when the taxpayer made the sale, he had divested himself of all ownership in the stock since the record there showed that the bank was willing to release the stock to the person to whom the taxpayer had made the sale, if the funds to be paid for the taxpayer's interest were paid over to the bank. The facts in the *Ligon* case are unusual and in no way comparable to the facts in the instant case.

The case of *Paine v. Commissioner*, 63 T.C. 736 (1975), cited by both parties, involved a claimed theft loss with respect to shares of Westec stock. The taxpayer in that case claimed the theft loss in 1966 and we held that the facts did not substantiate a theft of the taxpayer's stock and further held that in any event the taxpayer had failed to produce evidence as to the amount of the loss, if any. We pointed out that the parties agreed that the stock did not become worthless in 1966 and that the record did not show the actual value of the stock in 1966. Although both parties cite *Paine v. Commissioner, supra*, in our view the only relationship that case has to the issue in the instant case is that it also involved a claim with respect to Westec stock.

Considering this record as a whole, we conclude that petitioner has failed to show either that his Westec stock became worthless in 1969 or that he made a sale or exchange of his Westec stock in 1969. We, therefore, conclude that petitioner has failed to show that he sustained a capital loss in 1969 of his basis in his 17,400 shares of Westec stock.

*Decision will be entered for the respondent.*