## 21656. POPE v. BARNETT.

BELL, J. 1. "The sale of standing timber, where the contract contemplates that the growing trees are to remain in the soil for a fixed time or indefinitely, at the pleasure of the vendee, concerns an interest in the land. *Moore* v. *Vickers,* 126 *Ga.* 42 (54 S. E. 814). On the other hand, the prevailing rule seems to be that if the trees sold are to be immediately severed from the soil and carried away, and are not to be left to grow and attain additional strength from the soil, the sale is that of personal property, and not of an interest in land." *Graham* v. *West,* 126 *Ga.* 624 (55 S. E. 931).

2. "A contract of sale in regard to timber which is attached to the soil, but which is presently to be severed therefrom and converted into personalty before the title is to pass to the purchaser, is an executory sale of personalty, and not of an interest in land." *Clarke* v. *McNatt,* 132 *Ga.* 610 (3) (64 S. E. 795, 26 L. R. A. (N. S.) 585).

3. An oral agreement whereby an owner "contracted and agreed to sell" to another "all of the pine, oak, poplar and sweetgum timber located" on a described tract of land "at and for a price of six dollars ($6.00) per thousand feet on the stump, payment to be made for said timber as the same is sawed and stacked," and whereby the purchaser agreed "to commence cutting of said timber" within a few months and "to continue regularly such cutting and sawing operations until all the timber suitable for sawmill purposes is cut and removed," under which agreement the purchaser paid the sum of $500 "as an advance on the price," the remainder to be paid as above indicated, was an executory contract for the sale of personalty whereby the seller agreed to surrender to the purchaser the possession and title of the timber upon its being converted into lumber and paid for at the agreed price per thousand feet. *Lovelace-Eubanks Lumber Co.* v. *Brown,* 38 *Ga. App.* 223 (143 S. E. 434). See also, in this connection, *Harrell* v. *Williams,* 159 *Ga.* 230 (125 S. E. 452).

4. Where the purchaser, after taking and removing the better grades of the timber, refused to cut the poorer grades, notwithstanding all the

60

timber was sold at an average price, the seller could not sue the purchaser for the entire contract price of the timber which the purchaser failed and refused to cut. The seller still owned and possessed the remaining timber, and the remedy would be an action for damages for the breach of the contract; and the measure of the damage would be the difference between the contract price and the market value of such remaining timber. *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 140 (2) (42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112); *Irwin* v. *Askew,* 74 *Ga.* 581 (3); *Rounsaville* v. *Leonard Mfg. Co.,* 127 *Ga.* 735 (4) (56 S. E. 1030); *Reed* v. *Dougherty,* 94 *Ga.* 661 (20 S. E. 965); *Dilman* v. *Patterson Produce Co.,* 2 *Ga. App.* 213 (58 S. E. 365); *Mack* v. *Pardee,* 39 *Ga. App.* 310, 315 (147 S. E. 147); *Clark* v. *Wood,* 39 *Ga. App.* 340 (147 S. E. 173).

5. Since the plaintiff was not entitled to recover the purchase price, and alleged nothing as to the market value of the timber which the defendant failed and refused to cut, so as to show damage by the defendant's abandonment of the contract, no cause of action was stated, and the court erred in not sustaining the general demurrer and dismissing the petition. *Hadden* v. *Southern Messenger Service,* 135 *Ga.* 372 (3) (69 S. E. 480); *Sparks Milling Co.* v. *Western Union Tel. Co.,* 9 *Ga. App.* 728 (72 S. E. 179).

6. Since the contract did not show a sale of an interest in realty, the statute of frauds as to a sale of realty was inapplicable, and, seemingly, there was such part performance as would authorize a finding that the contract was removed from the operation of the statute so far as it might apply to a sale of personalty. *Nellis* v. *Houser,* 33 *Ga. App.* 266 (3) (125 S. E. 790).

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED FEBRUARY 23, 1932. REHEARING DENIED MARCH 5, 1932.

*W. A. Slaton,* for plaintiff in error.  *C. E. Sutton,* contra.

ON MOTION FOR REHEARING.

BELL, J.  In the third division of the original syllabus we referred to a payment of $500 as an advance on the purchase-price, whereas the petition was amended so as to allege a payment of $1,000 instead of $500. The decision is hereby amended so as to correct this error and to state the proper amount. We did not overlook the plaintiff's amendment with reference to the terms and conditions of the contract, but concluded that the true character of the agreement was disclosed by the facts alleged in the original petition, and that the allegations of the amendment did not require a different construction. The petition alleged that the agreement was made on December 15, 1928, and that "the defendant agreed to commence cutting of said timber not later than the spring of 1929,

and to continue regularly such cutting and sawing operations until all of the timber suitable for sawmill purposes was cut and removed," and that "if the defendant had carried out his contract, the cutting and sawing of such timber could have been completed by June 1st, 1929." It appears both from the petition and the amendment that the defendant entered upon the lands and cut and removed a large portion of the timber and paid therefor at the agreed price of $6 per thousand, but that he refused to continue operations and abandoned the contract after he had removed the better grades of the timber, and the plaintiff is seeking to recover the purchase-price of the remaining timber which it is claimed was included and sold by the agreement. The amendment to the petition contained the following allegations:

"Plaintiff shows that the timber of the kinds named on the tract of land described was not of uniform growth on the lands or of uniform quality, but that parts of the timber was of fine quality and heavy growth on the lands, whereas other parts were poor quality of scattering growth and located in places on said tract not easily accessible, whereas the heavy growth timber and that of good quality was within a mile of two planing mills and near the city limits of Washington, Georgia, and, being so located, was worth more than six dollars per thousand B. M. That plaintiff had refused to sell the good timber on said tract unless a contract was made to purchase all the timber suitable for sawmill purposes located on the lands, because she recognized the fact that unless the timber was sold as a whole, that there would be no sale for the scattered timber after the heavy growth and good quality timber was cut from the lands, and she would lose the sale of the scattered timber. Defendant was and is an experienced sawmill man, and owns and operates a planing mill less than one mile from the timber in question, and inspected the premises and location of the timber before making plaintiff an offer, and was informed by plaintiff of her refusal to sell any of said timber unless all the timber on the named track was sold, and of the reasons that plaintiff desired to sell all the timber on the tract as a whole, namely that only in this way could she realize a fair price for the scattered timber. That defendant agreed to cut, saw, and pay for all the merchantable timber of the kinds named on the lands, which was then suitable for sawmill purposes according to the usual methods of manufacture, and to commence such cutting

62

and sawing operations at once. That in accordance with this agreement defendant did pay plaintiff one thousand dollars as an advance on the purchase-price, and plaintiff admitted defendant into possession of the premises, and defendant commenced cutting and sawing operations on or about March 1st, 1929, and continued such operations until he had cut and sawn 212,000 feet of timber, or slightly more than half the amount on the entire tract. That defendant so informed plaintiff, and led her to believe that it was his intention to cut and pay for all of said timber at the price agreed on, but that defendant first cut and sawed the timber of good quality and heavy growth until he had sawed and removed an amount sufficient to account for the one thousand advanced, and thereupon the defendant ceased sawing operations, informing the plaintiff that he had an option about to expire on another tract, and that after he had cut this other tract he would immediately complete the cutting of all the timber purchased. That defendant then moved his mill' off of said lands, and has since refused to cut and saw the remainder of the timber or pay plaintiff therefor, though he had been requested so to do. That the defendant, by his manner in cutting all of the most valuable timber, acquired timber that was worth more than six dollars per thousand B. M., and by such cutting destroyed the commercial value of the scattered timber left on said lands, since it is impossible to sell the scattered timber to sawmill men, since the valuable and heavy growth timber has been cut, and that defendant knew that the cutting of the heavy growth and good quality timber would have the effect of rendering unsalable the scattering timber remaining on the lands, by making it unprofitable for sawmill operators to enter on the lands and cut such scattered timber. That such act of the defendant was and is a fraud upon this plaintiff, in that he contracted to cut and pay for all of said timber on said lands at the price of six dollars per thousand feet B. M., but that after cutting the valuable part of said timber he refused to perform his contract and cut that part of the timber which was scattered, knowing that such act would cause a loss and damage to plaintiff by rendering the balance of said timber unsalable, and such act did cause a loss to plaintiff in the amount stated. The defendant did by these acts mislead plaintiff and cause her to enter into such contract for the sale of timber, whereas plaintiff shows that it was defendant's intention to cut only the valuable

timber at the time contract was made, and that he promised to purchase all of said timber in order to gain possession of the valuable parts thereof, and that it was not defendant's intention to cut the scattered timber or pay for the same."

Upon a further consideration of the facts stated in this amendment, and of the case as a whole, we are still of the opinion that the mere oral agreement relied on by the plaintiff can not be taken as evidencing an intention to pass the title to the timber as of the date of such agreement. It is true that the facts of the cases cited in the first, second, and third divisions of the original syllabus were not identical with the facts of the present case; but we think the principles stated in those decisions are applicable. For instance, in *Graham* v. *West,* supra, it was stated as the prevailing rule that if the trees sold are to be immediately severed from the soil and carried away, and are not to be left to grow and attain additional strength from the soil, the sale is one of personalty, and not of an interest in land. Certainly it could not have been expected that the trees which were the subject-matter of the contract here under consideration would attain any appreciably additional growth within the period of five and a half months from December 15, 1928, until June 1 of the next succeeding year, to say nothing of the allegation that the defendant was to "commence such cutting and sawing operations at once." It is alleged that "plaintiff admitted defendant in possession of the premises and defendant commenced cutting and sawing operations on or about March 1st, 1929;" but, in view of the other terms of the agreement as set forth in the petition as amended, this averment must be taken as referring to an entry under a mere license to cut and remove the timber in accordance with the contract, the defendant to acquire title only to the product as the same was sawed, stacked, and paid for. Civil Code (1910), § 4130; *Susong* v. *McKenna,* 126 *Ga.* 433 (55 S. E. 236). See also, in this connection, *Massee & Felton Lumber Co.* v. *Macon Cooperage Co.,* 44 *Ga. App.* 590 (162 S. E. 396). The present case is distinguished from *Norman* v. *Ray,* 34 *Ga. App.* 380 (129 S. E. 795). As appears from the decision, the only question presented in the *Norman* case was as to the amount of the purchase-price agreed to be paid under the stipulations of the agreement. The contract there was in writing and recited that "the said parties of the first part [the owners] have this day sold and conveyed unto

64

said second parties [the purchasers]" the timber on a described tract of land. Neither of the parties raised any question as to whether the contract was intended to convey an interest in land or was a mere executory agreement for the sale of personalty.

As to whether the petition may be further amended so as to seek a recovery on the theory alluded to in the fourth division of the syllabus we, of course, will express no opinion at this time. See, in this connection, *Charleston & Western Carolina Ry. Co.* v. *Miller,* 115 *Ga.* 92 (41 S. E. 252); *Ellison* v. *Georgia R. Co.,* 87 *Ga.* 691 (4) (13 S. E. 809); *Rowland Co.* v. *Kell Co.,* 27 *Ga. App.* 107 (107 S. E. 602).

*Rehearing denied. Jenkins, P. J., and Stephens, J., concur.*