201 P.2d 359

**RANKIN et al. v. RIDGE et al.**

**No. 5132.**

Supreme Court of New Mexico.

Dec. 16, 1948.

Rehearing Denied Jan. 13, 1949.

H. Vearle Payne, of Lordsburg, for appellants.

Hubert O. Robertson, of Silver City, for appellees.

BRICE, Chief Justice.

The plaintiffs (appellees) brought this suit to recover for timber cut from their land under an oral contract made between their predecessor in title and the defend-

ants (appellants). The defendants by cross action sued plaintiffs for $24,500 damages claimed to have been sustained by them because of the refusal of the plaintiffs to permit the defendants to continue to cut timber under the terms of the contract after the plaintiffs purchased the property.

The cause of action, as alleged by plaintiff, is in substance as follows:

The plaintiffs purchased from D. C. Gibbs what is known as the N. H. Ranch in Catron County, New Mexico, on or about October 1, 1946. Prior to this purchase Gibbs had entered into an oral contract with defendants by the terms of which Gibbs sold the defendants the standing timber on parts of the ranch, of which contract plaintiffs had knowledge. That according to its terms the timber was to be checked and measured by the forest ranger stationed at the Jewett Forest Ranger Station, and the parties agreed to abide by his computation. That the ranger checked the timber felled and removed by defendants and computed it as being 125,330 board feet of yellow pine that was 25% defective, and 26,780 feet of Blackjack that was 10% defective, "That defendants were liable to pay under their contract for 94,000 board feet of yellow pine and 24,100 feet of Blackjack, or a total of 118,100 board feet at $5.50 per thousand board feet, or $649.55; that defendants had paid Gibbs $250 thereon,"

leaving a balance of $399.55 now owed to the plaintiffs, for which they prayed judgment.

The defendants answered, and also filed a cross action. But plaintiffs' case was not disposed of in the district court. The case is here on the question of whether the trial court erred in dismissing the cross complaint on plaintiffs' motion.

The allegations of the cross complaint, which are taken to be true for the purpose of our decision, are substantially as follows:

One Gibbs sold and conveyed to cross-defendants (plaintiffs) the N. H. Ranch, on which there was a large number of growing trees. In the month of May 1946, and prior to the sale of the ranch to cross-defendants, the cross-plaintiffs entered into an oral contract with Gibbs for the purchase of all merchantable timber on the patented land of said ranch, consisting of 2400 acres, to be paid for at $5.50 per 1000 board feet. By the terms of this contract the cross-complainants were to move a small sawmill upon the premises, and commence to saw and remove the merchantable timber therefrom in a "reasonably continuous manner," until all thereof had been removed and sawed. They paid Gibbs $250 at the time of making the contract, to be applied on the purchase price. Cross-complainants moved the mill on the premises and commenced to fell trees and saw them into lumber. Thereafter the contract was oral-

ly modified in that it was agreed that the ranger at the Jewett Ranger Station should mark certain timber surrounding the mill and the ranch house for cutting, and all other timber was to be cut and measured by the cross-complainants. The timber so marked was to be scaled and estimated by the forest ranger. After the trees marked by him should be cut and sawed, the rotten wood was to be measured and deducted from the original measurements, and thereupon the cross-complainants were to pay for the timber in that area. The cross-complainants agreed to this in consideration of the promise of Gibbs to have the ranger survey and mark the boundaries of all other patented lands in the ranch. Before Gibbs sold the ranch to cross-defendants he notified them of this contract, and they bought the ranch subject to the rights of cross-complainants, and upon the agreement that they would carry out the obligations of Gibbs in said contract. The cross-defendants have admitted their liability by making their complaint in writing herein against these cross-complainants, and by accepting the benefits of said contract, and bringing suit to compel performance on the part of these cross-complainants. The cross-complainants cut and removed approximately 96,574 board feet of timber. On April 8, 1947 the cross-defendants without excuse notified and demanded in writing that the cross-complainants remove their machinery from said property and refrain from cutting and removing any more timber. The cross-defendants have failed, refused and neglected to carry out the terms of the contract and cross-complainants have been refused entry upon the premises.

There were approximately one million board feet of merchantable timber upon the premises and cross-complainants have been damaged in the sum of $24,000. In addition thereto the cross-defendants had felled and cut some timber upon the premises previous to the notice, which timber they were not allowed to remove or saw; to their damage $500.00.

Thereupon cross-defendants filed the following motion:

"Come now the plaintiffs herein by their attorney, Hubert O. Robertson, and move the Court that the cross-complaint of the defendants be stricken for the reason that it contains immaterial matter, and move the Court that said cross-complaint be dismissed for the reason that it fails to state a claim upon which relief can be granted, and in support of such motions, plaintiffs point out to the Court that said cross-complaint shows on its face that the plaintiffs were not parties to the contract upon which defendants seek to recover, and that such contract was not such a contract as runs with the land so as to be binding upon plaintiffs as purchasers of the ranch property, and that such contract was not of such character as to be enforcible against

plaintiffs at the time of the alleged breach thereof by them."

The trial court sustained this motion and entered an order dismissing the cross-complaint.

Cross-defendants state in their brief:

"When Gibbs and Ridge Brothers made the contract, the plaintiffs were not contemplated as being interested in the matter in any way. Subsequently, when in August of 1946 Gibbs sold the ranch to the plaintiffs and told them of his oral agreement with Ridge Brothers, they succeeded to and replaced Gibbs in the contract. It makes no difference whether they orally agreed to assume the timber-cutting contract or whether they became interested in it simply as owners and purchasers of the real estate with knowledge of the contract, the result is the same. They succeeded to the Gibbs interest in the contract with all of its rights, privileges, and obligations, the obligations being limited by the fact that the contract was unenforceable because oral."

The question is whether the trial court erred in dismissing the cross complaint, upon the theory that the contract was within the statute of frauds.

It is a general rule that the sale of growing timber is within the fourth section of the Statute of Frauds, in that the trees are a part of the realty. Putney v. Day, 6 N.H. 430, 25 Am.Dec. 470; Slocum v. Seymour, 36 N.J.L. 138, 13 Am.Rep. 432; Van Alstine v. Wimple, 5 Cow., N.Y., 162; Owens v. Lewis, 46 Ind. 488, 15 Am.Rep. 295; Harrell v. Miller, 35 Miss. 700, 72 Am. Dec. 154; McGregor v. Brown, 10 N.Y. 114; Daniels v. Bailey, 43 Wis. 566; Garner v. Mahoney, 115 Iowa 356, 88 N.W. 828; Kileen v. Kennedy, 90 Minn. 414, 97 N.W. 126; Cooley v. Kansas City, P. & G. R. Co., 149 Mo. 487, 51 S.W. 101; Walton v. Lowrey, 74 Miss. 484, 21 So. 243; Griffith v. Ayer-Lord Tie Co., 109 Ark. 223, 159 S.W. 218; Elsberry v. Sexton, 61 Fla. 162, 54 So. 592; Burkitt v. Wynne, 62 Tex. Civ.App. 560, 132 S.W. 816; Miller v. Smith, 202 Ala. 449, 80 So. 833; Schaap v. Wolf, 173 Wis. 351, 181 N.W. 214, 17 A.L.R. 7; Beckman v. Brickley, 144 Wash. 558, 258 P. 488; Johnson v. Wallin, 227 N. C. 669, 44 S.E.2d 83; Walton Land & Timber Co. v. Long, 135 Fla. 843, 185 So. 839; Emerson v. Shores, 95 Me. 237, 49 A. 1051, 85 Am.St.Rep. 404.

█ However, according to the decisions of a number of courts, (the writer believes the majority of those that have decided the question, including the courts of England) a contract for the sale of trees to be immediately severed from the freehold by the vendee is not a sale of an interest in land, White v. Foster, 102 Mass. 375; Erskine v. Plummer, 7 Me. 447, 22 Am.Dec. 216; Banton v. Shorey, 77 Me. 48; Claflin v. Carpenter, 4 Metc. 580, 45 Mass. 580, 38 Am.Dec. 381; Nettleton v. Sikes, 8 Metc. 34, 49 Mass. 34; Yale v. Seely, 15 Vt. 221;

Huff v. McCauley, 53 Pa. 206, 91 Am.Dec. 203; Leonard v. Medford 85 Md. 666, 37 A. 365, 37 L.R.A. 449; Robbins v. Farwell, 193 Pa. 37, 44 A. 260; Goodnough Etc. Co. v. Galloway, D.C.Or., 171 F. 940; Philip A. Ryan Lbr. Co. v. Ball, Tex.Civ.App., 177 S.W. 226; Hurricane Lbr. Co. v. Lowe, 110 Va. 380, 66 S.E. 66; Fairbanks v. Stowe, 83 Vt. 155, 74 A. 1006, 138 Am.St.Rep. 1074; Strause v. Berger, 220 Pa. 367, 69 A. 818; West Lbr. Co. v. C. R. Cummings Export Co., Tex.Civ.App., 196 S.W. 546; Napier v. Baker, 235 Ky. 724, 32 S.W.2d 49; Cheatham v Head, 203 Ky. 489, 262 S.W. 622; Pope v. Barnett, 45 Ga.App. 59, 163 S.E. 517; Lovelace-Eubanks Lbr. Co. v. Brown, 38 Ga.App. 223, 143 S.E. 434; Clarke Bros. v. McNatt, 132 Ga. 610, 64 S.E. 795, 26 L.R.A.,N.S., 585; Wade v. Day, 232 Mich. 458, 205 N.W. 225; Marshall v. Green, (Eng.Com.Pleas Dec.) 1 C.P.D. 35; although there are numerous decisions to the contrary, Hirth v. Graham, 50 Ohio St. 57, 33 N.E. 90, 19 L.R.A. 721, 40 Am.St.Rep. 641; Knox v. Haralson, 2 Tenn.Ch. 232; Baucom v. Pioneer Land Co., 148 Ga. 633, 97 S.E. 671; Elmonte Inv. Co. v. Schafer Etc. Co., 192 Wash. 1, 72 P.2d 311; Gibson v. St. Joseph Lead Co., 232 Mo.App. 234, 102 S.W.2d 152.

It is held that the phrase "immediate severance" as before used, contemplates a severance as soon as it reasonably can be done under the existing circumstances. Cheatham v. Head, 203 Ky. 489, 262 S.W. 622.

The language of the contract here involved, regarding time of severance, clearly brings it within the definition of "immediate severance."

On this subject we quote from various texts, as follows:

"Definition of 'Goods.'

"Goods, within the meaning of the Statute, are:

"(a) Chattels personal, except current money bargained for as a medium of exchange;

"(b) Crops unsevered from the land, whether matured or not at the time when by the terms of the bargain they are to be sold, if they are of a kind subject to yearly cultivation;

"(c) Things attached to or forming part of the realty which are agreed to be severed therefrom before sale or promptly after the formation of the contract."

Comment:

"a. * * * Though strictly whatever is attached to the land is part thereof, crops which are the subject of yearly planting or cultivation, that is fructus industriales, have been classified under the Statutes as goods rather than part of the land. On the other hand fructus naturales while growing are part of the land; but under the circumstances stated in Clause (c) even fructus naturales have been held withdrawn from the operation of the provision of the

Statute relating to land. Clause (c) covers also things attached to land other than fructus naturales, such as minerals or ice, or even buildings." Restatement of Law of Contracts, Sec. 200 and Comment (a).

"In England the law has gone to great length in supporting the validity of an oral contract to sell standing trees. In Marshall v. Green, there was a parol sale of thirty-two trees 'to be got away as soon as possible.' After six of the trees had been cut down the seller countermanded the sale, but the buyer continued to cut, and the action was brought by the seller because of this. The court held that 'where the thing sold is to derive no benefit from the land, and it is to be taken away immediately, the contract is not for an interest in land.' Since part of the trees had been taken away the section of the Statute relating to goods was satisfied and the bargain was held to be enforceable. The same doctrine has prevailed in several of the United States, prior to the passage of the Sales Act and, though 'the courts of most of the American States that have considered the question (have held) expressly that a sale of growing or standing timber is a contract concerning an interest in land,' the Sales Act, copying as it has, the definition of 'goods' so far as concerns this question, from the English Statute, has adopted the English rule that any growing object attached to the soil is to be treated as goods, if by the terms of the contract it is to be immediately severed.

A contract to cut and market timber belonging to another in return for a share of the proceeds is a contract of hire and is enforceable." Williston on Contracts, (Rev.Ed.) Sec. 516.

"A grant or exception of growing trees is prima facie a grant or exception of an interest in land, and in most jurisdictions must be in writing under the fourth section of the statute of frauds, and it matters not whether the parties contemplated a severance or removal of the timber from the land. * * *" Thompson on Real Property (Perm.Ed) Sec. 112.

"Any growth of the soil, even though not produced by annual labor, is personalty after its actual severance from the soil by the owner of the land, as in the case of timber cut by him. Furthermore, by the weight of authority, there may be constructive or legal severance of vegetable products while still growing or standing in the soil. Thus, it has been decided that, upon a coveyance by the landowner of growing trees apart from the land, they become personalty, and the same effect has been given to an exception of the trees on a conveyance of the land. By other decisions, while it is recognized that the ownership of the trees may be vested in a person other than the owner of the soil, they are regarded as still retaining the character of land, so long as they are rooted in the soil, * * *." Tiffany on Real Property, Sec. 595.

The tendency of the later decisions is toward the holding that if the sale is made upon the condition that the trees are to be "immediately severed" from the soil, as the phrase has been defined herein, the contract is not within the fourth section of the Statute of Frauds. This view was adopted by the authors of the uniform sales act, Williston on Contracts, Sec. 521, which, however, has not been adopted here.

The great weight of authority holds that the sale of crops (fructus industriales) matured or not, is not within the statute; also there is much authority that the sale of grass uncut, and buildings attached to the soil to be immediately removed, are not within the Statute of Frauds.

A decision of the question is not without its difficulties.

"It has been said that there is scarcely a legal question on which there has been more elaborate discussion and more difference of opinion and decision than the question whether trees growing on land can be sold without a writing, and that, although many refined distinctions have been drawn, the decisions bearing on the subject cannot be wholly reconciled." 37 C.J.S., Frauds, Statute of, § 75.

Not only are the decisions of the courts irreconcilable; but the same may be said of the decisions of the courts of individual states. Those of the state of Georgia are examples that apply to other states. It was held in Graham v. West, 126 Ga. 624, 55 S.E. 931, 932, "that if trees sold are to be immediately severed from the soil and carried away, and are not to be left to grow and attain additional strength from the soil, the sale is that of personal property, and not of an interest in land."

Later in Baucon v. Pioneer Land Co., supra, the same court held that a contract substantially like the one construed in the Graham case was within the Statute of Frauds.

The Georgia Court of Appeals in Pope v. Barnett, 45 Ga.App. 59, 163 S.E. 517, and Lovelace-Eubanks Lbr. Co. v. Brown, supra, held that such contracts are sales of personalty, and not within the Statute of Frauds.

We will not further pursue this quest. We conclude that the sale was that of personal property, not within the Statute of Frauds.

The plaintiffs were not only aware of the defendants' (cross-plaintiffs) contract with plaintiffs' grantor, but agreed to carry out its terms as a part of the consideration for the purchase of the property. Plaintiffs state in their brief:

"When Gibbs and Ridge Brothers made the contract, the plaintiffs were not contemplated as being interested in the matter in any way. Subsequently, when in August of 1946 Gibbs sold the ranch to the plain-

tiffs and told them of his oral agreement with Ridge Brothers, they succeeded to and replaced Gibbs in the contract. It makes no difference whether they orally agreed to assume the timber-cutting contract or whether they became interested in it simply as owners and purchasers of the real estate with knowledge of the contract, the result is the same. They succeeded to the Gibbs interest in the contract with all of its rights, privileges, and obligations, the obligations being limited by the fact that the contract was unenforceable because oral."

When the plaintiffs purchased the Gibbs property the burden of carrying out Gibbs' part of the contract with defendants was assumed by them as a part of the consideration of purchase. Assuming that the knowledge which plaintiffs had of defendants' contract with Gibbs, at or prior to the date they purchased the property, did not bind the plaintiffs, certainly their assumption of the contract in their trade with Gibbs in which plaintiffs "succeeded to the Gibbs interest in the contract with all of its right, privileges and obligations" did bind them.

We stated in Johnson v. Armstrong & Armstrong, 41 N.M. 206, 66 P.2d 992, 994:

"We think the better rule is that a contract made upon a valid consideration between two or more parties for the benefit of a third may be enforced by such third party if he accepts it after it is made, though he is not named in the contract or may not have known of it at the time." Also see Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525; Key v. George C. Breece Lumber Co., 45 N.M. 397, 115 P.2d 622; Fuqua v. Trego, 47 N.M. 34, 133 P.2d 344.

The plaintiffs, therefore, have the same relation to the defendants (cross-plaintiffs) as Gibbs would have had if the property had never been sold to plaintiffs, and are liable as Gibbs would have been liable for any breach of the contract. We are of the opinion that the trial court erred in dismissing the cross-complaint.

The judgment is reversed and cause remanded to the district court with instructions to set aside its judgment, reinstate the case upon the docket of the court and proceed to a hearing thereof not inconsistent herewith. It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.