[Civ. No. 8769. Third Dist. July 18, 1956.]

ANITA H. ASCHERMAN, Appellant, v. ERNEST M. McKEE, JR., et al., Respondents.

Carl R. Schulz and James E. Busch for Appellant.

Spurr & Brunner and Clyde H. Small for Respondents.

VAN DYKE, P. J.—Plaintiff brought this action for declaratory relief, and she appeals from the judgment rendered.

In August of 1951 plaintiff entered into a contract with Ernest M. McKee, Jr., and Patricia Ann McKee, his wife, for the purchase and sale of the right to cut and remove, on or before July 31, 1956, all fir and pine timber 20 inches and larger in diameter standing on certain described real property owned by plaintiff. The contract price was $20,000, payable $5,000 on execution of the agreement and the balance at the rate of $5.00 per thousand for timber removed with minimum annual payments of $5,000 until the total price should have been paid. It was provided that all timber which had not been removed from the property by July 31, 1956, should remain the property of Mrs. Ascherman. As additional consideration, the McKees agreed to widen and improve an existing road on the property. They were given the right to construct access roads to be laid out entirely in the timber. There were covenants against cutting timber within 50 feet of any spring without written permission, for indemnifying Mrs. Ascherman against claims for injury or death of any person, for damage to property which might result from the McKees' operations, and for keeping insurance in force protecting Mrs. Ascherman from such liabilities. Mrs. Ascherman agreed that if she decided to sell small trees for piling, or if she purchased adjacent standing timber, she would give the McKees the first right to purchase from her. There was a covenant against the assignment of the contract or the assignment of any right to remove timber thereunder without Mrs. Ascherman's written consent. It was provided that on breach of any covenant by the McKees, Mrs. Ascherman could, at her option, terminate the contract.

The McKees began logging the land and continued to do so for about two weeks, at which time they entered into a contract with defendant Stoll Lumber Company, a copartnership, hereinafter called Stoll, wherein the copartnership agreed to buy from the McKees the right until July 31, 1956, to cut and remove from the land all fir and pine timber thereon 20 inches or larger in diameter. This contract followed closely, but not exactly, the pattern of the Ascherman-McKee contract, but the purchase price differed materially. Stoll agreed to pay the McKees $7.00 per thousand for "all pine sawlog timber", $5.00 per thousand for all "fir sawlog timber" and $1.00 per thousand for all fir and pine timber unsuitable for sawlogs and designated as "pulp" logs. The price was payable

$10,000 on execution of the agreement, and thereafter logs were to be paid for at the agreed rate per thousand as they were removed from the land. The total purchase price was to be determined by a cruise of the timber stipulated to be "a hundred percent cruise for timber which can be economically removed," and a price was then to be determined by multiplying "the timber shown by the cruise times the amount shown as the purchase price per thousand feet."

Stoll went upon the land and proceeded to log. Roads were improved and constructed, and there appears to have risen throughout no dispute between the McKees and Stoll concerning the performance by Stoll of its agreement with the McKees. The McKees continued to account to Ascherman for timber removed in accordance with the requirements of their contract and continued to make payments based on such accounts, with the result that by July 10, 1952, the total purchase price of $20,000 had been paid to Mrs. Ascherman. Mrs. Ascherman, however, did make complaints that in various particulars the McKees were failing to keep their covenants; and, finally, on September 11, 1952, after receiving the last of the purchase price, she wrote to the McKees declaring the contract terminated. She charged that the insurance provisions of the contract had not been met; that the existing road on the property had not been improved as agreed; that timber had been cut nearer than 50 feet from a spring; that roads had been located through open land; and that the contract had been assigned. She forbade further removal of timber and asserted that she would hold the McKees liable in damages if they did so.

The McKees continued to assert their right to cut and remove timber and Stoll continued to log the land. On October 7, 1952, Mrs. Ascherman began this action. In her pleading she charged the same violations of contractual covenants that she asserted in her written notice. She further alleged the McKees claimed they were entitled to continue to remove timber from the land notwithstanding the termination of the contract and that Stoll, whom she made a codefendant with the McKees, claimed some right to cut and remove timber. She alleged that an actual controversy had arisen concerning the rights of the parties under the contract, and she prayed for declaratory relief with incidental award of damages and for injunction restraining further entry on her land. The McKees and Stoll answered, admitting that there was a controversy, but denying that the McKees had breached the contract. They

asked that if it should be determined, however, that in any respect such breaches had occurred, the McKees be relieved from forfeiture of the contract on account thereof, and that in lieu of forfeiture damages for such breaches as were ascertained to have occurred be fixed "in accordance with the provisions contained in Section 3275 of the Civil Code."

The court made the following findings: That the McKees had not breached their agreement as to improving the existing road; that they had cut some trees within 50 feet of a spring without consent, but that Mrs. Asherman had thereby suffered only nominal damage; that the McKees had located some roads across open land, and that this breach of their covenant had caused damage to Mrs. Asherman for which she should be compensated; that the contract and the rights accruing to the McKees thereunder had not been assigned to Stoll; that the covenants as to insurance had been partially but not wholly kept, but that Mrs. Ascherman had suffered no injury thereby; that none of the covenant violations taken singly nor all taken together gave to Mrs. Ascherman any right to terminate the rights and interest of the McKees, and that Mrs. Ascherman's attempt to do so had been void and without effect. The court found that the McKees were the owners of and entitled to the continued enjoyment of the benefits accruing to them under their contract. It made no ascertainment or award of damages, but preserved the rights of Mrs. Ascherman to recover them. The court made no express decision concerning the rights of Stoll.

Although by the specific wording of the contract, the subject of the sale is described as being the right to cut and remove timber, meeting a certain specification over a period from the date of the contract to July 31, 1956, it is apparent from the contract that the principal object of the parties was to make a sale of all of the trees upon the land described which met certain specifications and to give the incidental right to the buyer for a limited time to enter upon the land and remove those trees. The following matters appearing in the contract make this clear. The parties agreed upon a total price of $20,000 for all trees growing upon the described land which were 20 inches or more in diameter and set up a schedule of minimum annual payments whereunder the whole would be paid in three years even though not a tree was cut. The parties contemplated, however, that logging would begin immediately as is shown by the clause in the contract requiring the buyers to account each month for timber cut during the

preceding month. Acting under the contract the buyers immediately began logging, and the logging continued without letup until, shortly before the first year had elapsed, the full purchase price had been paid. Throughout the contract the parties referred to the total purchase price of $20,000 even to providing that the total payments to be made under the accounting schedule adopted should not exceed that sum. It was agreed that if there should be any violation of any of the covenants entered into by the McKees with respect to the manner of removing the trees Mrs. Ascherman could, at her option, declare the entire remaining sales price, together with damages for the breach, due and payable forthwith. In 7 American Law Reports 2d, at page 517, is an annotation to the reported case of *Rankin* v. *Ridge* [53 N.M. 33 (201 P.2d 359, 7 A.L.R.2d 510)], wherein it is said that, while there is no unanimity of opinion upon the subject, nevertheless the majority rule is that where it is apparent from the contract that the prime object is the severance of the trees within a reasonable time or within such time as may be fixed, rather than the use of the land to increase the growth of timber, the sale is one of goods and not of an interest in real property. In *Rankin* v. *Ridge, supra,* quoting from Tiffany on Real Property, section 595, the court said:

"Any growth of the soil, even though not produced by annual labor, is personalty after its actual severance from the soil by the owner of the land, as in the case of timber cut by him. Furthermore, by the weight of authority, there may be constructive or legal severance of vegetable products while still growing or standing in the soil. Thus, it has been decided that, upon a conveyance by the landowner of growing trees apart from the land, they become personalty, and the same effect has been given to an exception of the trees on a conveyance of the land."

In *Palmer* v. *Wahler*, 133 Cal.App.2d 705, 711 [285 P.2d 8], this court said:

". . . In California, under the provisions of Civil Code, sections 658 and 660, standing timber purchased separately from the land under a contract for severance, thereby becomes personalty for all purposes depending upon the contract of purchase. As pointed out by both parties in their briefs, the legal status of standing timber is not uniform throughout the several states, and in California there are no decisions directly upon the point involved here. However, the language of Civil Code, sections 658 and 660, is in our opinion quite clear and

explicit, and regardless of what the rule is elsewhere, we are satisfied that as to those claiming under or by reason of a contract of sale, the California rule is that where standing timber is purchased separately from the land for the purpose of severance, it must thereafter be considered as 'goods' or personal property. (See also *Davis* v. *McFarlane*, 37 Cal. 634 [99 Am.Dec. 340].)''

When the contract is viewed as one for the sale of the timber, the covenants therein on the part of the buyers are seen to be covenants which govern only the manner in which the buyers were to remove the timber they had purchased. The covenants found by the court to have been breached, such as those having to do with insurance, with the method of constructing access roads and the covenant against cutting timber near springs, were intended for the protection of the seller, and the option given to terminate the contract for breach was to force the buyers to keep those covenants.

The trial court found that the McKees had not violated the covenant against assignment, and in this we think the trial court was correct. The McKee-Stoll contract did not purport to be an assignment of the Ascherman-McKee contract nor of any rights thereunder. On the contrary, it purported to be a contract for the sale of the timber which the McKees were in process of paying for, with the right, so far as the McKees could give it to Stoll, to remove the timber. Although the same covenants governing the method of removal and the insuring of the McKees against claims arising from Stoll's operation were contained in the McKee-Stoll contract as were contained in the Ascherman-McKee contract, that fact did not make the contract one of assignment. There was nothing in the Ascherman-McKee contract which forbade the McKees from selling the timber they were purchasing from Ascherman. Nor was there anything to forbid the McKees from having the land logged by others for them in order to get the timber they were buying. It was not stipulated that the McKees should personally log the area. What happened, therefore, when the McKee-Stoll contract was executed was this: The McKees resold the timber to Stoll, and, as a part of the agreement, Stoll was to remove the timber, obeying in all matters, however, the restrictions which the Ascherman-McKee contract placed upon the McKees. This was a resale and not an assignment. Furthermore, while similar in many of its terms, the McKee-Stoll contract did not cover the full subject matter of the Ascherman-McKee

contract. It omitted the right of the McKees under the latter contract to continue to use the access roads to reach timber on lands not owned by the Aschermans, but adjacent thereto, and this for a term of two years beyond the time within which they had the right to remove the Ascherman timber. Also omitted was the first right to purchase given the McKees by Mrs. Ascherman if she should proceed to sell the substandard trees on her land for poles and piling, and the first right to purchase if she should obtain adjacent timber and proceed to sell the same. We hold that the record supports the trial court's finding that there was no violation by the McKees of their covenant not to assign the Ascherman-McKee contract or their rights thereunder. They remained fully liable to Ascherman for the violation of any covenants of their contract with her, and there was no attempt to substitute another in their place in this respect.

The contract provided that the McKees would hold Mrs. Ascherman harmless from loss on account of any claims or causes of action for injury to person or property which might result from the McKees' operations on the land; and they further agreed to keep in force during the term of the agreement, insurance protecting Mrs. Ascherman against such liability in an amount of not less than $200,000. The court found that this covenant to furnish insurance was not strictly observed. However, it was partially observed, and substantial insurance was at all times kept in force protecting Mrs. Ascherman. As covering the first year of their proposed operations the McKees had insurance issued protecting them and Mrs. Ascherman as an additional insured against liabilities for injury or death to persons in the amounts of $100,000 for one person and $300,000 for persons injured in one accident, for property damage to the property of any person in the sum of $5,000 and for property damage arising from any one accident in the sum of $25,000. The McKees caused a certificate of this insurance to be issued to Mrs. Ascherman and delivered to her. Though the insurance did not meet the contract requirements with exactness, nevertheless Mrs. Ascherman made no protest as to the variance and continued to receive the payments for the timber until the whole price had been paid. Thereafter, other insurance in varying amounts was procured, and, generally, Mrs. Ascherman was named as an additional insured. The court held that the failure to comply strictly with the contract requirements as to insurance were insubstantial, had caused no damage, and by reason

of her failure to make timely objections Mrs. Ascherman was not entitled to claim a breach of the insurance covenant.

As to the claim that timber had been cut within 50 feet of springs without permission, the court found that some trees had been cut nearer to one spring than 50 feet and that Mrs. Ascherman could be compensated in damages for such violation of the covenants as to removal of timber, saying that the breach was not substantial. The court found that the covenants as to the location of access roads in timber rather than across open land had been violated and that damage had been caused to the real property thereby. It found that the injury could be and should be compensated in damages, but it made no ascertainment of the amount of damages to be paid to Mrs. Ascherman.

Defendants had asked that, pursuant to section 3275 of the Civil Code, they be relieved of any forfeiture if covenant violations were found to have occurred. The trial court found that it was proper to so relieve them, and declared that the action of Mrs. Ascherman in attempting to terminate the contracts and the rights of the McKees to enter upon the land and remove timber had been ineffectual; that the Mc-Kees were still the owners of the rights which had accrued to them under the contract, including the right to go upon the land during the specified term and remove the timber they had bought and paid for. We think this action was well within the power of the court. The Ascherman-McKee contract provided that upon breach by the McKees of any covenant contained therein, Mrs. Ascherman should have all remedies provided by law and could, at her option, declare the contract terminated. Within about two months after she had received the full payment for the timber, Mrs. Ascherman notified the McKees of claimed violations of covenants. She stated she had elected to terminate the contract and stated she would hold them liable for any further entry upon her land and for any trees thereafter removed. That this termination if successful, would result in a forfeiture is sufficiently shown by what has heretofore been said. The contract provision under which she acted was a typical forfeiture provision. The action could be taken for any breach of any covenant, however insubstantial, even though it could result in severe loss to the buyers. As found by the trial court, the cancellation of the McKees' rights which Mrs. Ascherman attempted bore no reasonable relation to the injures she had received and would have worked an extremely heavy loss on

them. Under such circumstances, relief from forfeiture can be granted. As said by the Supreme Court in *Ebbert* v. *Mercantile Trust Co. of Calif.*, 213 Cal. 496, 499-500 [2 P.2d 776] :

". . . This section [Civ. Code, § 3275] codifies the equitable rule, . . . : 'Wherever a penalty or a forfeiture is used *merely to secure the payment of a debt*, or the performance of some act or the enjoyment of some right or benefit, equity considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead thereof, proportionate to the damages actually resulting from the nonpayment, or nonperformance, or nonenjoyment, according to the stipulations of the agreement.' " See also *Bolln* v. *Petrocchi*, 95 Cal.App.2d 589 [213 P.2d 513] ; *Bedell* v. *Barber*, 80 Cal.App.2d 806 [182 P.2d 591] ; *Gonzales* v. *Hirose*, 33 Cal.2d 213 [200 P.2d 793].)

The remedy of relief from forfeiture could also, in this case, have been granted under section 3369 of the Code of Civil Procedure which provides that neither specific nor preventive relief can be granted to enforce a forfeiture in any case. By bringing her action for declaratory relief after she claimed she had terminated the contract and cancelled out the rights of the McKees, Mrs. Ascherman was seeking the aid of a court to enforce the forfeiture she had declared. The action of the trial court in refusing to enforce the forfeiture and/or in relieving therefrom is well sustained by the record here.

Appellant contends that, even if the action of the trial court in granting relief from forfeiture be upheld, still the cause must be returned to the trial court to ascertain the compensatory damages to which she is entitled in lieu of her right to terminate. Treating the action as an ordinary one either to obtain relief from or to enforce a forfeiture under the respective code sections, this contention must be upheld. The obligation to pay compensatory damages caused by a breach of contract which has resulted in the accrual of a forfeiture is a condition for the granting of the relief sought and, equally, denial of enforcement of a forfeiture accrued from breach of covenant will not be declared except upon condition that compensatory damage for breach be first ascertained and paid as a condition for such denial. That relief from forfeiture will be granted only upon condition that the one relieved make full compensation to the other party for such

damage as his failure to perform his covenants may have caused, is expressly stated in section 3275 of the Civil Code; and is universally required as a condition for denying enforcement of a forfeiture at the suit of the creditor. (*Ebbert v. Mercantile Trust Co. of Calif.*, *supra*, 213 Cal. 496 [2 P.2d 776]; *Odd Fellows' Sav. Bank v. Brander*, 124 Cal. 255 [56 P. 1109].) Is the rule any the less applicable because the action is brought in the form of one for declaratory relief? We think not. ■ When, in an action for a declaratory judgment, the court proceeds beyond a declaration of existing jural relations, and grants remedies obtainable in ordinary actions, it follows the rules of law generally governing the granting of such remedies. Here the court in effect granted the remedy of relief from forfeiture. It reinstated the Ascherman-McKee contract and adjudged the attempt to terminate to have been void. The relief it gave the McKees could have been granted them in an ordinary action brought by them for that purpose. But in such an action the court would have ascertained the damage they had inflicted upon Mrs. Ascherman and would have required compensation to be paid as a condition for relief. It was error to grant that relief unconditionally. The form in which the action was brought wrought no change in the requirements for the relief granted.

■ The court did not expressly declare what were the rights of Stoll, but by implication it disposed of all issues pertaining thereto. Appellant contends she is entitled to such a declaration. We do not find substantial error here. Stoll has the right, so long as the McKees' right to remove timber endures, to log the land, while obeying in all things the requirements of the Ascherman-McKee contract as to the methods by which the logging should be accomplished. Under their contract of purchase the McKees could, as they did, resell the timber to Stoll. Stoll could, under and in accordance with the right of the McKees, go upon the land and obtain that which they were buying. These matters go along with the reinstatement of the Ascherman-McKee contract. No express declaration of the rights of Stoll was necessary.

What we have said does not require such a reversal of the judgment as will set the matter at large.

That portion of the judgment declaring the rights of the parties is affirmed; that portion of the judgment granting relief from forfeiture is reversed, only, however, because such relief was not properly conditioned and not because such relief should not have been granted. The cause, therefore,

is remanded with instructions to the trial court to proceed to ascertain the amount of damages suffered by Mrs. Ascherman from the violation of covenants found to have occurred and, having fixed the same, to enter judgment relieving the McKees from forfeiture of their rights on condition that within such time as the court deems reasonable they pay the damages so fixed, and in the alternative, if the damages be not so paid, to declare and enforce the forfeiture inflicted by Mrs. Ascherman for breach of covenants, together with such further relief as is proper in the premises.

Schottky, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied August 13, 1956, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1956. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.