[Civ. No. 9444.   Third Dist.   Oct. 21, 1958.]

ELK RIVER MILL AND LUMBER COMPANY (a Corporation), Appellant, v. GEORGIA-PACIFIC CORPORATION (a Corporation) et al., Respondents.

Falk & Falk, William F. Reed and Louis F. DiResta for Appellant.

Herbert W. Clark, Richard J. Archer, Girvan Peck, Morrison, Foerster, Holloway, Shuman & Clark, Arthur W. Hill, Hill & Hill, Robert S. Miller, King, Miller, Anderson, Nash

& Yerke, Henry D. Costigan, Walker Lowry, McCutchen, Thomas, Matthew, Griffiths & Greene and McCutchen, Doyle, Brown & Enersen for Respondents.

WARNE, J. pro tem.*—Appellant, Elk River Mill and Lumber Company, a corporation, hereinafter called ''Elk River,'' brought this action against Hammond Lumber Company, a corporation, hereinafter called ''Hammond,'' Hammond-California Redwood Company, a corporation, hereinafter called ''Redwood,'' and Georgia-Pacific Corporation, a corporation, hereinafter called ''Georgia-Pacific,'' for a judicial declaration that a logging contract entered into between Elk River and Hammond for the logging of the timber on Elk River lands by Hammond had been terminated and rescinded; to quiet title to certain Elk River lands and to the standing and down timber thereon; to enjoin Hammond and Redwood from further cutting and removing timber on or from the Elk River lands; and to recover damages for timber cut and removed by said respondents subsequent to the alleged rescission and termination of the contract. The case was tried by the court sitting without a jury and judgment was entered in favor of the respondents. This appeal followed.

In 1948, appellant, Elk River, and Hammond entered into a contract for the purchase and sale of all standing and down timber on certain Humboldt County property owned by Elk River. Hammond made an advance payment of $500,000. The purchase price to be paid by Hammond for said timber was to be determined by quantity cut and removed from the said real property at the rate of $7.50 per thousand board feet and if the logging was not completed by December 31, 1959, the remaining timber was, at the option of Elk River, to be cruised and paid for at the agreed price of $7.50 per thousand, and Hammond was to have until December 31, 1961, to complete the logging. Hammond was required to pay all the taxes on the timber from and after March of 1957. If the $500,000 advance payment more than paid for the timber, Elk River was to make an appropriate refund to Hammond. Section 13 of the contract provided that neither party could assign or transfer its interest in the contract without the consent in writing of the other party but ''this provision shall not be construed to prevent Hammond from entering

*Assigned by Chairman of Judicial Council.

into contracts with other persons for any portion of the work undertaken to be performed hereunder by Hammond.''

From October, 1948, to October, 1956, the property was logged by Hammond in accordance with good logging practice and to the satisfaction of Elk River. During this period Hammond subcontracted a large part of the trucking. During the same period Hammond invested $15,000 in surveying and $100,000 in building roads on the Elk River property and removed about 90 million board feet of timber. At the time this controversy developed, approximately 39 million board feet were yet to be logged.

By an agreement dated May 23, 1956, Georgia-Pacific obtained the right to buy all the stock of Hammond. Tax and financial problems made it difficult for Georgia-Pacific to complete the stock purchase, and Georgia-Pacific made an alternative proposal: It agreed to buy the Hammond assets for $79,508,800 (that being the agreed price of all stock), provided, however, that part of the purchase price was to be paid in debentures rather than cash. The asset purchase agreement was dated September 24, 1956, and it provided that the transaction should close on October 22, 1956.

Promptly after the Georgia-Pacific-Hammond stock purchase proposal became enforceable and the transaction was revised to take the form of an asset purchase, Elk River was requested to consent to an assignment of the 1948 timber sale agreement to Georgia-Pacific or to its wholly owned subsidiary, Redwood. Elk River refused to consent to such assignment.

Elk River's refusal to permit an assignment of the 1948 timber contract forced a change in the asset purchase plan between Hammond and Georgia-Pacific. Consequently, the liquidation plan whereby Hammond was to have disposed of all its assets to Georgia-Pacific was modified to exclude the sale of Hammond's interest in the 1948 timber contract and it was agreed that Hammond would enter into a subcontract with Hammond-California, a Georgia-Pacific subsidiary, whereby Hammond-California, for an agreed consideration, would log the Elk River property and deliver the logs to Hammond at Eureka, California, and that Hammond would then sell the logs to Hammond-California, at cost, the cost to include logging expense, stumpage payments to Elk River, and any other expense incurred by Hammond. The contract then provided that the work should be performed strictly in accordance with the Elk River agreement, and specifically

provided that no assignment of Hammond's rights under the Elk River agreement was contemplated.

The sale by Hammond to Georgia-Pacific was consummated on October 22, 1956, and thereupon Hammond, a Delaware corporation, filed a notice of dissolution with the Secretary of State of the State of Delaware. The trial court found: That Hammond has retained its interest in the timber on the Elk River property and the Hammond liquidation program has been modified accordingly; that the activities of Hammond since October 23, 1956, have been its own activities undertaken on its own account and for its own purposes; that those activities have not been the activities of Georgia-Pacific or Hammond-California taken in the name of Hammond Lumber Company; that there has been no assignment by Hammond of the timber sales agreement of October 22, 1948; that the logging contract and the log sales agreement are not, either in form or in substance or in effect, an assignment of the October 22, 1948, contract; that they are not the equivalent of such an assignment; that the transactions evidenced by the logging contract and the log sales agreement were the bona fide transactions entered into by the parties for legitimate business purposes and supported by legitimate business considerations; that it was not a sham transaction or a device to evade the provisions of paragraph 13 of the timber sales agreement of October 22, 1948; that Hammond did not transfer the burden of its obligations under the terms of the Elk River-Hammond contract and that Hammond remains obligated to perform said contract; that subsequent to October 23, 1956, Hammond distributed all its assets to its stockholders, except the timber on the Elk River property, certain cash and the benefit of certain contractual obligations of Georgia-Pacific and Hammond-California. The court further found that the logging operations of Hammond-California on the Elk River property are being conducted by the same methods as when Hammond did the logging and those operations are being supervised by the same foreman and the same logging superintendent who were in charge for Hammond; that the ultimate responsibility for those operations rests with Earl B. Birmingham, president of Hammond-California, who is and for several years has been president of Hammond; that by the provisions of the asset purchase agreement of September 24, 1956, Georgia-Pacific and Hammond-California have guaranteed the performance by Hammond of the timber sales agreement of October 22, 1948; that as of December 31,

1956, the net worth of Hammond-California was approximately $13,500,000 and the net worth of Georgia-Pacific (excluding Hammond-California from consideration) was approximately $47,800,000; that Hammond has tendered to Elk River prompt payment for all timber removed from the Elk River property since October 22, 1956, at the contract stumpage rate of $7.50 per thousand; that Hammond has tendered to Elk River its certified check in the amount of $292,500 to pay in full (at the contract stumpage rate of $7.50 per thousand) for the 39 million feet of timber estimated to remain on the Elk River property; that Elk River has not proved that Hammond will be unable to perform its remaining obligations under the Elk River-Hammond timber sales agreement, and, further, that Elk River has failed to prove that it has been or will be in any way damaged or prejudiced by the transactions of which it complains; that all actions taken by the defendants in connection with the transactions to which this case relates have been taken in good faith and under claim of right; and that Hammond has fully performed all of its obligations under the timber sales agreement of October 22, 1948, and that there has been no breach by Hammond of that agreement.

Elk River contends and argues that Hammond has, in substance and effect, assigned the 1948 contract in violation of paragraph 13 of the 1948 timber contract. As heretofore stated, the trial court found that Hammond had not violated the covenant against assignment and we feel that, in this, the record amply sustains the trial court. The findings show on their face that they are based not only on documents but upon all of the surrounding circumstances. Some of the evidence is oral, some is written and much of it bears in some degree on the intent and meaning of the contractual agreement of which Elk River complains. Under such circumstances the trial court's inferences and conclusions of fact are decisive on appeal. As stated in *Estate of Rule,* 25 Cal.2d 1, at page 11 [152 P.2d 1003, 155 A.L.R. 1319]:

"The rule is that an 'appellate court will accept or adhere to the interpretation [of a contract] adopted by the trial court—and not substitute another of its own—— . . . where parol evidence was introduced in aid of its interpretation, and such evidence . . . is such that conflicting inferences may be drawn therefrom.' (4 Cal.Jur. 10-Yr. Supp. (1943 rev.) 146-147, § 192; see also 2 Cal.Jur. 934-939, § 549.)"

And here, as in that case, "certainly inferences may

be drawn from the contract and the surrounding circumstances . . . which would support the finding which we must presume was made by the trial court relative to the intention of the contracting parties.''

In a material way the Hammond-Elk River timber contract and the facts of this case are similar to the facts and the contract ruled upon by this court in *Ascherman* v. *McKee,* 143 Cal.App.2d 277-283 [299 P.2d 367]. In that case Mrs. Ascherman in 1951 entered into a contract with the McKees ''for the purchase and sale of the right to cut and remove, on or before July 31, 1956, all fir and pine timber'' on the Ascherman property. The purchase price was $20,000, payable $5,000 down and the balance at the rate of $5.00 per thousand for the timber removed. ''There was a covenant against the assignment of the contract or the assignment of any right to remove timber thereunder without Mrs. Ascherman's written consent.'' The McKees logged for two weeks and then arranged for Stoll to do the logging. Stoll agreed to pay the McKees $7.00 per thousand for all timber removed. Stoll set about logging the property and the McKees continued paying the Aschermans until the total purchase price of $20,-000 had been paid. Mrs. Ascherman then sought to terminate the contract for breach of various covenants, including the covenant against assignment. The trial court concluded that there had been no assignment. This court agreed that the trial court was correct in so concluding. Here, as in that case, the contract entered into between Hammond and Redwood did not purport to be an assignment of the Elk River 1948 timber contract nor of any rights thereunder. On the contrary, it purported to be a contract with Redwood for the logging of timber which Hammond was in the process of paying for. There is nothing in the Elk River contract which prevented Hammond from subcontracting the logging. As heretofore stated, paragraph 13 provides: ''It is expressly understood and agreed that this contract shall not be assigned or transferred by either party hereto without the consent in writing of the other, but this provision shall not be construed to prevent Hammond from entering into contracts with other persons for any portion of the work undertaken to be performed hereunder by Hammond.'' In view of this provision in the contract, it may not be said that Hammond did not have the right to subcontract the logging operations. To say otherwise would be contrary to the clear intent and purpose

of the paragraph. Here, as in the Ascherman-McKee contract, there was nothing in the Elk River contract which forbade Hammond from selling the timber they were purchasing from Elk River. The fact that Redwood was to deliver the logs to Hammond at Eureka where Hammond, in turn, was then to resell them to Redwood is of no concern to appellant. This was a sale and not an assignment. Elk River acknowledges that here, as in the Ascherman case, the logging subcontract is not identical with the timber purchase agreement. For one thing, Hammond-California must complete the logging by December 31, 1958, rather than December 31, 1961. Apparently the reason for the difference in the time of completion of the logging operations was that if Redwood does not finish the work by December 31, 1958, Hammond will have until October 23, 1959, to complete the logging with its own employees. Elk River points out that in the Ascherman case the McKees had not disposed of their assets. The Hammond sale to Georgia-Pacific makes no difference. Here, Hammond has tendered to Elk River the estimated amount for all timber remaining to be cut or logged upon the Elk River property. Moreover, as matters now stand, Elk River can look not only to Hammond and its stockholders for performance of the 1948 agreement but also to Georgia-Pacific with a net worth of $47,800,000 and Hammond-California with a net worth of $13,500,000, for each has agreed with Hammond to discharge whatever obligations Hammond may have to Elk River.

We do not consider it necessary to distinguish the many cases cited by appellant on the subject matter, since we feel that the ruling in the Ascherman case is decisive here. If there was no assignment in the Ascherman case there was none here. Hammond did not seek to substitute another in its place.

Nor do we believe that there is merit in appellant's contention that by reason of the assignment and transfer of all Hammond's assets and its dissolution Elk River had the right to rescind. The fact that Hammond has filed a notice of dissolution with the Delaware Secretary of State does not mean that the corporation no longer exists. Under section 278 of the Corporation Law of Delaware, Hammond remains in existence in order to gradually close and settle its affairs for the term of three years from such expiration or dissolution. The section, in part, provides: "All corporations, whether they expire by their limitations or are otherwise dissolved, shall nevertheless be continued, for the term of

three years from such expiration or dissolution, bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which the corporation shall have been established.'' Under this provision Hammond will remain in existence until October 23, 1959, for all purposes mentioned in the statute.

Elk River contends that the notice of dissolution terminated the 1948 timber contract and forfeited the timber to Elk River. Such is not the case. In *Addy* v. *Short* (1952), 47 Del. 157 [89 A.2d 136, 139], the Supreme Court of Delaware rejected the position for which Elk River contends. In holding that a dissolved corporation could maintain an action of ejectment to force a right of reverter the Delaware court pointed out that the purpose of section 278 is to make certain that upon dissolution a corporation shall not forfeit its rights. The court said:

''The section above quoted is in effect a statutory expansion of the equitable doctrine that upon dissolution of a corporation, its property, notwithstanding the technical rules of the early common law, does not escheat to the sovereign or revert to the original grantor, and will be administered in Chancery for the purpose of winding up the corporate affairs and distributing the assets to those equitably entitled to them. *Cf. Diamond State Iron Co.* v. *Husbands*, 8 Del.Ch. 205 [68 A. 240] ; *Washington Fire Co.* v. *Yates*, 13 Del.Ch. 32 [115 A. 365]. During the three-year period of winding up, the corporation functions exactly as it had functioned before dissolution, with the important qualification that its powers are limited to closing its affairs and do not extend to carrying on the business for which it was established. But as concerns the property it had at the time of dissolution, its title and possession are unimpaired. Whatever rights it had, of whatever nature, are preserved in full vigor during the three-year period. Any other conclusion would contravene the plain language of the statute. The suggestion that the act of dissolution in itself in some fashion works a forfeiture or extinguishment of a legal right, by analogy to the death of an individual, is therefore on the face of the statute unsound.''

To the same effect see *Harned* v. *Beacon Hill Real Estate Co.* (1911), 9 Del.Ch. 232 [80 A. 805], (1912) 9 Del.Ch. 411

[84 A. 229, 235] ; *Townsend* v. *Delaware Glue Co.* (1918), 12 Del.Ch. 25 [103 A. 576] ; *Addy* v. *Short, supra,* is recognized as an authoritative statement of the Delaware law. (See *United States* v. *P. F. Collier & Son Corp.,* 208 F.2d 936, 940 ; *United States* v. *Maryland State Licensed Beverage Assn.,* 138 F. Supp. 685, 708 ; *Christian* v. *Texas Gas & Power Corp.* (D.C. Tex. 1952), 14 F.R.D. 80, 81 ; *Stensvad* v. *Ottman,* 123 Mont. 158 [208 P.2d 507] ; *Big Sespe Oil Co.* v. *Cochran,* 276 F. 216, 223.)

Elk River argues that by subcontracting the logging and selling the logs Hammond is "continuing the business" for which it was established, in violation of section 278 of the Delaware statute. This is not true. Hammond points out that until October 23, 1956, it was in the business of manufacturing and selling lumber, with four billion feet of timber, four mills and 33 retail yards. Since October 23, 1956, Hammond has not manufactured or sold any lumber or operated mills or yards. This means Hammond has not continued in business in violation of section 278 and the trial court so found. What Hammond is now doing is precisely what section 278 authorizes, that is, closing its business and disposing of its remaining assets.

Among those assets is the timber on the Elk River property. Elk River assumes that the timber on Elk River lands belongs to Elk River. We cannot agree with Elk River in this respect. The contract of October 22, 1948, the short form agreement, the indemnity agreement and the amendment of December 20, 1950, all speak in terms of a present sale to Hammond, i.e., "Elk River agrees to sell to Hammond and Hammond agrees to buy from Elk River all the standing and down timber" on the described property. This language purports a sale of the timber, not a license to cut; that it was intended as a sale is further borne out by the fact that upon the execution of the contract Hammond paid Elk River $500,000 and, as the contract makes plain, it was considered probable that this $500,000 would pay for all the timber. Further, Hammond, by the terms of the contract, was thereafter required to pay all taxes on the timber. We feel that this means that title passed when the agreement was signed, and became one of Hammond's assets. (See *Woodbine* v. *Van Horn,* 29 Cal.2d 95, 107 [173 P.2d 17] ; *Johnson* v. *Besoyan,* 85 Cal.App.2d 389, 392 [193 P.2d 63] ; *Aiello* v. *Sliskovich,* 72 Cal.App.2d 39 [163 P.2d 768] ; *Gianelli* v. *Globe*

*Grain & Milling Co.,* 48 Cal.App. 103 [191 P. 720].) Therefore, under the provisions of section 278 of the Delaware Corporation Law, Hammond is authorized to dispose of and convey this property. The result would be the same even if Hammond has no more than an executory contract authorizing it to harvest the timber, since under the ruling in *Trubowich* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 345 [182 P.2d 182], the right to compel Elk River to perform its agreement passed on dissolution of the corporation to the shareholders who, as partners, were entitled to enforce that right. The court, in the Trubowich case, *supra,* said:

"Since the assets of a dissolved corporation can only be distributed to the shareholders subject to the rights of creditors of the corporation, the assets of the corporation remained subject to an equitable charge for all debts owed by the corporation (see Civ. Code, § 402; *Estate of Scrimger,* 188 Cal. 158, 166 [206 P. 65] ; *Stanford Hotel Co.* v. *M. Schwind Co.,* 180 Cal. 348, 354 [181 P. 780] ; 16 Fletcher, Cyc. Corporations, perm. ed., §§ 8127, 8161; Ballantine, Corporations, rev. ed., 723 ; see 97 A.L.R. 480), and its shareholders who continued the business as a copartnership became personally liable to the creditors of the corporation on existing contracts. (*National Union Bank of Watertown* v. *Landon,* 45 N. Y. 410; *Steele* v. *Stanley,* 237 Ky. 517 [35 S.W.2d 867] ; 16 Fletcher, ibid., § 8132.) *Nor under modern statutes does the dissolution of the corporation terminate its ability to enforce a contract for the delivery of goods."* (Emphasis added.)

There is no merit in the contention that the consideration for the 1948 contract has failed. By the terms of the contract Elk River is entitled to money for the timber and to good logging. The record shows that Elk River concedes that it has been paid in full for all timber removed prior to October 22, 1956, and the record further shows that Hammond has tendered payment in full, and in advance, for all timber remaining on the property. Logging is being continued by the same methods and by the same personnel acting under the same supervision as when Hammond's employees did the work, logging then concededly satisfactory to everyone. Nor is there any merit in Elk River's contention that Hammond has repudiated the 1948 agreement. The record shows, and the court so found, that there was no repudiation of this contract.

For the reasons hereinabove stated we conclude that the

judgment should be affirmed. Therefore, we consider it unnecessary to discuss the remaining points raised by this appeal.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 19, 1958.